UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
CASE NO.: 1:21-CV 22436 DPG

ORBSAT CORP.,

    Plaintiff,

vs.

THOMAS SEIFERT

    Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, Orbsat Corp. ("Orbsat" or the "Company"), sues Defendant, Thomas Seifert ("Seifert"), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the requirement of complete diversity is satisfied.

2. Seifert is an individual residing in Douglas County, Colorado and is *sui juris*.

3. Orbsat, is a Nevada corporation with its headquarters in Miami-Dade County, Florida and otherwise doing business in Miami-Dade County, Florida.

4. On July 6, 2021, this action was removed by Seifert from the 11th Judicial Circuit Court in and for Miami-Dade County, Florida to this venue.

5. All conditions precedent have been performed, occurred, or have been waived.

6. Orbsat retained the undersigned law firm and agreed to pay it a reasonable fee for representing Orbsat in this matter.

## GENERAL ALLEGATIONS

7. On March 11, 2021, Orbsat and Seifert entered into an Employment Agreement (the "March Agreement") whereby Seifert agreed to serve as Orbsat's Chief Financial Officer ("CFO"). A copy of the March Agreement is attached hereto as **Exhibit "A."**

8. Seifert agreed to serve as CFO in accordance with the Company's policies and procedures in a manner that is consistent the duties, responsibilities, and authority commensurate with the position of CFO.

9. At the time Seifert assumed the duties and responsibilities of CFO, Orbsat maintained, among other monetary control policies, strict wire authorization procedures.

10. Pursuant to Orbsat's wire procedures, all outgoing wire payments were required to be preceded by Orbsat's receipt of an invoice from a known vendor/supplier.

11. Regardless of vendor, all outgoing wires are required to be approved by two Company officers.

12. Upon receipt of an invoice requiring payment by wire to a bank account not previously established in Orbsat's banking system, the Orbsat employee responsible for authorizing the wire must call the accounting department of the requesting company.

13. The authorizing employee must dial a phone number verified through the requesting vendor's known website. The authorizing employee may not rely on contact information within any email from the requesting party.

14. Upon contacting the vendor's accounting department, the authorizing employee is required to confirm both the validity of the requested wire and the accuracy of the instructions.

15. Once the wire information is confirmed, the wire should be set up as a template in Orbsat's banking system.

16. The above steps must be followed in the event of any change in wire instructions by a known vendor or supplier.

17. Orbsat's bank, PNC Bank, was aware of Orbsat's procedures and was prepared to enforce safeguards against transmission of any wire payment that were not fully authorized by two Orbsat officers.

**Seifert circumvents Orbsat's safeguards**.

18. Not long after being named CFO, Seifert opened an account at Bank of America and transferred Orbsat funds into that account.

19. Notwithstanding Orbsat's efforts to institute rigorous wire payment policies, and unbeknownst to Orbsat's Board of Directors (the "Board"), Seifert set up the wire transfer procedures at Bank of America such that only one officer's authorization was required to initiate a wire.

**Orbsat's listing efforts with Nasdaq**.

20. At the outset of 2021, Orbsat was taking active steps to raise its listing status with the Nasdaq stock exchange.

21. In connection with that effort, Orbsat was working with Donohoe Advisory Associates, LLC ("Donohoe Advisory").

22. On February 17, 2021, Orbsat successfully wired $5,000.00 to Nasdaq in partial payment of Nasdaq's listing application fee.

23. A template was set-up in Orbsat's banking system to accommodate future wire payments to Nasdaq.

24. On May 26, 2021, Donohoe Advisory advised Seifert that the balance owed on Nasdaq's listing fee was $45,000.00.

**Seifert is made aware of active efforts to scam Orbsat**.

25. On or about May 26, 2021, Seifert informed Orbsat's CEO, David Phipps, that he recently received a number of suspicious emails.

26. Mr. Phipps warned Seifert to treat all emails with "extreme caution" going forward.

27. On the morning of May 27, 2021, Mr. Phipps received a suspicious email from someone purporting to be from CNP Consulting, LLC ("CNP"), demanding payment of $7,500.00 be sent to a previously unknown bank account.

28. Mr. Phipps was suspicious of the email's origins because it was not consistent with prior known emails received from CNP. Further, the bank account identified in the email was not in CNP's name.

29. Upon examination, Mr. Phipps noticed that the sender's email address had been disguised to mimic an email address used by an actual employee at CNP.

30. Mr. Phipps contacted CNP directly and confirmed his suspicion that the email was a fraudulent attempt to dupe Orbsat into wiring funds to a scammer.

31. Attached to the fraudulent email was an edited version of an invoice that had been previously sent by the consultant to Seifert's email address.

32. It was apparent to Mr. Phipps that Seifert's email account had been compromised as part of the scam, and the original consultant's invoice had been intercepted and edited by the scammer to provide the surface appearance of legitimacy.

33. Upon information and belief, sometime prior to May 26, 2021, Seifert's email account was compromised after he responded to a phony email with his Microsoft username and password.

34. On May 27, 2021, Mr. Phipps called to warn Seifert that his email had been compromised.

35. During the call Mr. Phipps detailed a series of actions that Seifert needed to immediately take to safeguard the Company.

36. These cyber security measures included: (1) changing Seifert's email password; (2) disconnecting Seifert's computer and phone pending evaluation by Orbsat's cyber security specialist; (3) replacement of Seifert's computer and phone at the Company's expense; and (4) consultation with Hector Delgado, an Orbsat Board member with law enforcement experience.

37. Seifert did not take any of the actions prescribed by Mr. Phipps.

**Seifert's choices open the door to the scammers.**

38. On May 27, 2021, Seifert received an email ("Phony Email") from an individual posing as an official with Nasdaq.

39. The imposter's email address was "michael.wolf@nasd**s**aq.**net**" instead of Michael.wolf@nasdaq.**com** (emphasis added).

40. Two other email addresses that were copied on the Phony Email were also deliberately misspelled to mimic actual emails of employees of Donohoe Advisory. Instead of the correct email suffix "advisory.com," both emails end with "adviso**i**ry.com." (emphasis added).

41. Further, the body of the Phony Email contains numerous red flags as to its fraudulent origin and false nature.

42. For example, the Phony Email on its face appears careless and unprofessional. It lacks any Nasdaq logo or that of any other authorized company.

43. The Phony Email is riddled with grammatical errors and contains three (3) mis-capitalized words, including "The" and "Am" and lacks simple punctuation such as periods.

44. Additionally, the imposter/sender of the Phony Email demonstrated a complete lack of familiarity with basic western business norms by referring to Seifert as "Mr. Tom" instead of his surname.

45. In addition to the surface signs of fraud, the message of the Phony Email is suspicious and should have prompted Seifert to investigate further.

46. Specifically, the Phony Email refers to a supposed mishap involving an incorrectly entered bank account number.

47. The scammer includes new wire instructions and demands "Payment" be sent "today."

48. The imposter directs questions to a cell phone number with a Niagara Falls area code instead of a business phone. The real Michael Wolfe is based in Bethesda Maryland.

49. Despite these red flags, and despite the warnings and security measures prescribed by Mr. Phipps' to thwart the active measures being taken against Orbsat, Seifert made no attempt to gather additional information or involve anyone at Orbsat to investigate.

50. Instead, Seifert made the scam possible by initiating the $45,000.00 from the Bank of America single authorization bank account previously established by him.

51. Had Seifert made a cursory effort to verify the wire request with Nasdaq, he would have discovered the fraudulent nature of the Phony Email.

52. Had Seifert not circumvented the wire safeguards put in place by Orbsat at PNC, the fraudulent wire could have been stopped.

53. In the process of sending the wire, Seifert disclosed confidential banking information to the scammers.

54. Immediately after Seifert authorized the wire, he failed to contact Nasdaq to confirm the wire's receipt.

55. Had Seifert timely learned that Nasdaq did not receive the wire, he could have called the recipient bank to place a hold on the account and investigate the fraudulent account. He did not.

56. On June 7, 2021, Nasdaq contacted Seifert by email and inquired as to the outstanding balance for the uplisting application fee. Again, Seifert took no action to determine why the $45,000.00 had not been received by Nasdaq.

57. Had he done so, he would have learned of the scam, which would have allowed for an immediate investigation.

**Seifert obstructs Orbsat's attempts to investigate the email scam**.

58. On June 16, 2021, Seifert received a call from Nasdaq concerning the balance of the still outstanding uplisting fee.

59. Following this call, Seifert finally disclosed to Mr. Phipps that he wired $45,000.00 to the email scammer in response to the Phony Email.

60. Seifert speculated that Nasdaq's email system had been hacked. It had not.

61. Mr. Phipps asked Seifert to forward a copy of the Phony Email in connection with the Company's investigation, but Seifert never complied.

62. Subsequently, Seifert failed to respond to repeated telephone and email requests for information from senior management in connection with Orbsat's investigation.

63. Due to Seifert's misconduct, all of the safeguards Orbsat implemented and maintained to avoid being scammed were nullified, resulting in a $45,000.00 loss to Orbsat.

64. Upon learning of Seifert's misconduct in connection with the email scam, Orbsat promptly began reviewing Seifert's work.

65. As result of its review, Orbsat discovered that Seifert was responsible for several fraudulent misrepresentations and non-disclosures to the Board.

**Seifert misleads the Board**

66. Following Orbsat's May 27, 2021, Nasdaq listing, Seifert was asked to research potential award of 795,000 shares of stock ("Stock Issue") for the Company's directors and officers, which included 175,000 shares ("Seifert Stock Award") issuable to Seifert.

67. Thereafter, Seifert assured Orbsat's CEO and Chairman that he had carried out the necessary research on the matter of the Stock Issue and had received the approval of the Company's attorney, Ralph V. De Martino of Schiff Hardin, LLP.

68. As a result of Seifert's assurance, the Board convened a telephonic meeting on June 2, 2021 to approve, among other things, Seifert's Stock Award.

69. During the meeting, Seifert assured the Board that he had conferred with Mr. De Martino prior to the meeting and obtained his approval to move forward with the Stock Award.

70. Unbeknownst to the Board, Seifert's statement was false.

71. The meeting proceeded, and the Board approved, by resolution, all items on the agenda, including Seifert's Stock Award.

72. At the close of the Board meeting, Seifert was asked to prepare the necessary disclosures to the Securities and Exchange Commission ("SEC") in connection with the Stock Issue.

73. On June 5, 2021, Mr. De Martino was asked to review the Form 8-K prepared by Seifert in connection with the Stock Issue.

74. Upon receipt of the draft Form 8-K, Mr. De Martino immediately informed the Board that prior to the Board meeting he instructed Seifert that the Stock Issue should **not** be proposed to the Board under any circumstances since it had not been disclosed in the Company's SEC Form S-1.

75. Mr. De Martino further advised the Board that the Company had insufficient shares to issue under its incentive plan and that Seifert was previously aware of this fact.

76. Additionally, Mr. De Martino cautioned the Board that before any shares were issued to Directors or Officers, a new executive incentive plan would need to be approved by the Board, a fact that Seifert should have also been aware of.

77. As a result of Mr. De Martino's advice, the Board agreed that the resolution approving the Stock Issue was improperly entered because it was based on false information provided by Seifert.

**Seifert misleads the Board in connection with his employment agreement**.

78. On May 28, 2021, the Company disclosed by way of its Form 8-K filing that certain individuals joined the Company as members of the Board of Directors.

79. Seifert took advantage of the change in the Board of Directors.

80. During the same period, May-June 2021, as Orbsat was preparing for a new Board, Seifert insisted that Orbsat enter into a new employment agreement with him.

81. Since Orbsat has a pending registration statement relating to the Company's recent public offering, Seifert knew that his contract would need to go through an audit review, underwriting review, and a legal review by counsel for Orbsat.

82. Seifert had possession of his own unapproved and unreviewed draft executive employment agreement, to which he requested several of his own edits ("Unsanctioned Employment Agreement").

83. On June 1, 2021, at 5:01 PM, Seifert emailed a draft executive employment agreement for another officer to Mr. De Martino for his review and approval. Seifert did not send his own Unsanctioned Employment Agreement, despite having possession of it.

84. Mr. De Martino did not review and approve the draft employment agreement of the other officer before the Meeting of the Board of Directors scheduled for the following day.

85. Prior to the Meeting of the Board, <u>Seifert failed to send his</u> Unsanctioned Employment Agreement to Mr. De Martino, nor did the Unsanctioned Employment Agreement go through the audit review and underwriting review.

86. On June 1, 2021, at 6:58 p.m., Seifert emailed several draft employment agreements—including his own Unsanctioned Employment Agreement—to the Board.

87. On June 2, 2021, at the same Board meeting that Seifert used to mislead the Board about the Stock Issue, Seifert presented several executive employment agreements for Board approval, including his own Unsanctioned Employment Agreement.

88. Seifert misrepresented to the entire Board that his Unsanctioned Employment Agreement was reviewed and approved by Mr. De Martino.

89. As CFO for Orbsat, Seifert knew that he was responsible for putting his Unsanctioned Employment Agreement through underwriting review, audit review, and corporate counsel review.

90. For example, before Orbsat voted on employing a new Executive Chairman of the Board, Seifert had the contract reviewed by the underwriters, auditors, and corporate counsel.

91. Based on Seifert's misrepresentations, Orbsat approved his Unsanctioned Employment Agreement. A copy of the executed Unsanctioned Employment Agreement is attached hereto as **Exhibit "B**.**"**

## COUNT I – BREACH OF FIDUCIARY DUTY

92. Orbsat realleges paragraphs 1 through 91 *supra* as if fully set forth herein.

93. As an officer of Orbsat, Seifert owed fiduciary duties of care to Orbsat, including, but not limited to, the duty to refrain from acts or omissions which involve fraud or intentional misconduct harmful to Orbsat.

94. Seifert breached his fiduciary duties by: (1) circumventing the Company's wire procedures and banking safeguards; (2) refusing to follow Mr. Phipps' fraud prevention measures; (3) concealing the truth about his role in the May 27, 2021 email scam; (4) obstructing Orbsat's investigation into the May 27, 2021 email scam; (5) flouting instructions from Orbsat's counsel, Mr. De Martino, regarding the Stock Issue; (6) misrepresenting to the Board Mr. De Martino's legal findings regarding the Stock Issue, and by extension, the Seifert Stock Award; and (7) misrepresenting to the Board the review and approval status of his Unsanctioned Employment Agreement.

95. Seifert's breaches of his fiduciary duties are the proximate and legal cause of substantial damages to Orbsat, including, but not limited to, the loss of $45,000.00 in connection with the May 27, 2021 email scam, monetary losses in connection with the Seifert Stock Award, and payment of additional undue compensation to Seifert.

WHEREFORE, Plaintiff, Orbsat Corp., demands judgment against Defendant, Thomas Seifert, for monetary damages, pre-judgment and post-judgment interest, costs, and attorneys' fees, as permitted under applicable law.

## **COUNT II – BREACH OF THE UNSANCTIONED EMPLOYMENT AGREEMENT**

96. Orbsat realleges paragraphs 1 through 91 *supra* as if fully set forth herein.

97. Section 2 of the Unsanctioned Employment Agreement states that Seifert "shall serve as Chief Financial Officer, Secretary and Treasurer of the Corporation, with such duties, responsibilities, and authority as are commensurate and consistent with his position, as may be, from time to time, assigned to him."

98. As CFO and Treasurer of Orbsat, Seifert was responsible for upholding Orbsat's policies and procedures and ensuring an adequate level of control over the Company's finances.

99. Seifert failed to fulfill his duties and responsibilities as CFO and Treasurer of Orbsat by failing to: (1) adhere to Orbsat's wire and banking policies and procedures; (2) employ an adequate level of control over Company finances; (3) undertake necessary anti-fraud measures; (4) exercise the necessary due diligence in protecting Orbsat funds; (5) cooperate with Orbsat's efforts to investigate the May 27, 2021 email scam; and (6) properly research the criteria and conditions necessary for the Stock Issue.

100. As Secretary, Seifert was responsible for managing Board meetings, providing the Board with accurate information regarding corporate activities, conditions and plans, maintaining adequate corporate records, and facilitating suitable corporate communications.

101. As Secretary, Seifert was also responsible for safeguarding Orbsat's confidential information, such as its business plans and passwords.

102. Seifert failed to fulfill his duties and responsibilities as Secretary by: (1) failing to share critical legal advice provided to him by Mr. De Martino; (2) disclosing Orbsat's confidential information to fraudsters; (3) scheduling a meeting of the Board without adequate or accurate information; (4) establishing an agenda for a Board meeting without adequate or

accurate information; (5) holding a Board meeting without adequate or accurate information; and (6) failing to provide adequate or accurate information to the Board regarding the Stock Issue.

103. Seifert's breaches of his official responsibilities are the proximate and legal cause of substantial damages to Orbsat, including, but not limited to, the loss of $45,000.00 in connection with the May 27, 2021 email scam, monetary losses in connection with the Seifert Stock Award, and payment of additional undue compensation to Seifert.

WHEREFORE, Plaintiff, Orbsat Corp., demands judgment against Defendant, Thomas Seifert, for rescission of the Seifert Stock Award, monetary damages, and all pre-judgment and post-judgment interest, costs, attorneys' fees, as permitted under applicable law.

### COUNT III – FRAUDULENT INDUCEMENT

104. Orbsat realleges paragraphs 1 through 91 *supra* as if fully set forth herein.

105. Seifert fraudulently induced Orbsat to enter into the Unsanctioned Employment Agreement by misrepresenting to the Board that the Unsanctioned Employment Agreement had been vetted and approved via the Company's underwriting review, audit review, and corporate counsel review.

106. Seifert fraudulently induced Orbsat to issue a resolution approving the Seifert Stock Award by misrepresenting to the Board that Orbsat's legal counsel had authorized and approved the Stock Issue.

107. Contrary to Seifert's misrepresentations, Orbsat's legal counsel advised Seifert that the Stock Issue should not be proposed to the Board pending compliance with applicable disclosure requirements.

108. Seifert knew that his false statement of material fact was indeed false, as he knew his own Unsanctioned Employment Agreement and request for additional stock was never

approved and never underwent the required audit review, underwriting review, and legal review.

109. Seifert intended that the Board rely on his misrepresentations and false statements, to induce Orbsat to approve and execute his Unsanctioned Employment Agreement and to approve the Seifert Stock Award.

110. The Board relied on Seifert's misrepresentations and false statements to its detriment.

111. Seifert's fraudulent inducement has caused Orbsat injury through the increased compensation and more favorable terms and compensation to Seifert under the Unsanctioned Employment Agreement and the Seifert Stock Award.

WHEREFORE, Plaintiff, Orbsat Corp., demands judgment against Defendant, Thomas Seifert, for rescission of the Seifert Stock Award, monetary damages, all pre-judgment and post-judgment interest, costs, attorneys' fees, as permitted under applicable law.

## COUNT IV – FRAUDULENT MISREPRESENTATION

112. Orbsat realleges paragraphs 1 through 91 *supra* as if fully set forth herein.

113. Seifert made false statements to Orbsat concerning material facts.

114. Specifically, Seifert falsely represented to the Board that his Unsanctioned Employment Agreement had been vetted and approved via the Company's underwriting review, audit review, and corporate counsel review.

115. Seifert also falsely represented to the Board that Orbsat's counsel authorized and approved the Stock Issue, and by extension, the Seifert Stock Award.

116. Seifert knew that his representations were false.

117. Seifert intended to induce the Board to act on his misrepresentations.

118. Orbsat was injured as a result of its reliance on Seifert's representations, through

the increased and more favorable terms to Seifert under the Unsanctioned Employment Agreement and the request for additional stock.

WHEREFORE, Plaintiff, Orbsat Corp., demands judgment against Defendant, Thomas Seifert, for rescission of the Seifert Stock Award, monetary damages, all pre-judgment and post-judgment interest, costs, attorneys' fees, as permitted under applicable law.

## COUNT V – CONSTRUCTIVE FRAUD

119. Orbsat realleges paragraphs 1 through 91 *supra* as if fully set forth herein.

120. The Unsanctioned Employment Agreement and the Seifert Stock Award were obtained by fraud.

121. Seifert took unconscionable advantage through misrepresentation and/or concealment.

122. Specifically, Seifert took improper advantage of his position of trust by failing to make full and fair disclosures in connection with the approval of his Unsanctioned Employment Agreement and the Stock Issue, at the expense of Orbsat.

123. Orbsat relied upon the representations and omissions of Seifert.

124. Plaintiff has no adequate remedy at law and demands rescission of the Seifert Stock Award, which was fraudulently and/or otherwise improperly obtained.

WHEREFORE, Plaintiff, Orbsat Corp., requests that this Court enter judgment against Defendant, Thomas Seifert, for rescission of the Unapproved Employment Agreement and Seifert Stock Award, interest, costs, and such other and further relief as may be just, necessary, and appropriate.

[Certificate of Service on following page]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **August 31, 2021**, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below referenced Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

**PHILLIPS, CANTOR & SHALEK, P.A.**

Presidential Circle
4000 Hollywood Boulevard, Suite 500-N
Hollywood, Florida 33021
Telephone: (954) 966-1820 / Fax: (954) 414-9309

By: /s/
GARY S. PHILLIPS
*Attorneys for Plaintiff*
Florida Bar No. 339814
Email: gphillips@phillipslawers.com
GEORGE N. ANDREWS
Florida Bar No. 15885
Email: gandrews@phillipslawers.com
PHILLIPS, CANTOR & SHALEK, P.A.
Presidential Circle
4000 Hollywood Boulevard, Suite 500-N
Hollywood, Florida 33021
Telephone: (954) 966-1820
Fax: (954) 414-9309

## SERVICE LIST

**JASON N. GOLDMAN**
**DAVIS GOLDMAN, PLLC**
*Counsel for Defendant*
1441 Brickell Avenue, Suite 1400
Miami, FL 33131
Telephone: (305) 800-6673
Facsimile: (305) 675-7880
Email: jgoldman@davisgoldman.com
Secondary Email: eservice@davisgoldman.com

**Tanesha Walls Blye, Esq.**
**R. Martin Saenz, Esq.**
**SAENZ & ANDERSON, PLLC**
*Counsel for SEIFERT*
20900 N.E. 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
Email: tblye@saenzanderson.com;
msaenz@saenzanderson.com
Secondary Email: ursula@saenzanderson.com