UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-22436-GAYLES/TORRES

THOMAS SEIFERT,

Plaintiff,

v.

ORBSAT CORPORATION, a Nevada corporation, and CHARLES M. FERNANDEZ,

Defendants.
_____

ORBSAT CORPORATION, a Nevada corporation,

Plaintiff,

v.

THOMAS SEIFERT, individually,

Defendant.
_____/

**PLAINTIFF THOMAS SEIFERT'S MOTION TO DISQUALIFY GARY S. PHILLIPS, ESQ. AS COUNSEL FOR DEFENDANTS ORBSAT CORP. AND CHARLES FERNANDEZ AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, THOMAS SEIFERT ("SEIFERT"), through undersigned counsel, pursuant to Florida Rule of Professional Conduct 4-3.7 and Local Rule 11.1(c), moves to disqualify Defendants' counsel, Gary S. Phillips, Esq. and his law firm Phillips, Cantor & Shalek, P.A ("Testifying Counsel"), from representing Defendants, ORBSAT CORP. ("ORBSAT") and

CHARLES M. FERNANDEZ ("FERNANDEZ") (together "DEFENDANTS"), in this proceeding[1] as Testifying Counsel is a necessary fact witness in the instant action, and states:

## SUMMARY OF THE MOTION

### Disqualification is Warranted as Gary S. Phillips, Esq. is a Necessary and Material Fact Witness

Pursuant to R. Reg. Fla. Bar 4-3.7, Testifying Counsel should be disqualified from representing DEFENDANTS as he is a necessary fact witness to two key factual issues in this matter and were he to remain in the representation, his testimony would skew the case, result in jury confusion, inconvenience the Court, and prejudice SEIFERT.

Testifying Counsel is expected to testify in two key areas that are material to SEIFERT's claims and DEFENDANTS' anticipated defenses:

(1) Testifying Counsel was the Subject of the Unlawful Activity to Which SEIFERT Objected — the **True** Reason for SEIFERT's Unlawful Retaliatory Termination: SEIFERT maintains DEFENDANTS manufactured pretextual reasons for his retaliatory discharge that are intended to cover up the real reason for terminating SEIFERT's employment, i.e. SEIFERT's objection to the unilateral instruction from FERNANDEZ, ORBSAT's then brand new Chief Executive Officer ("CEO"), that SEIFERT send $25,000 of ORBSAT's funds to Testifying Counsel, who was FERNANDEZ's personal attorney. As ORBSAT's Chief Financial Officer ("CFO"), SEIFERT objected because FERNANDEZ instructed SEIFERT to pay Testifying Counsel in a manner that bypassed corporate governance and internal accounting controls for a publicly-traded company in violation of federal law. SEIFERT was immediately threatened with

---

[1] SEIFERT has also filed a motion seeking Testifying Counsel's disqualification from representing ORBSAT in the Orbsat Corp. v. Thomas Seifert v, Case No. 21-cv-22436-DPG (the "Related Case").

termination for expressing his objection and was fired soon thereafter, because of his objection to FERNANDEZ instructing him to engage in the unlawful conduct. Testifying Counsel is at the heart of this dispute.

Regarding this true reason for SEIFERT's retaliatory termination - SEIFERT's objection to FERNANDEZ's instruction to use ORBSAT's funds to retain FERNANDEZ's personal counsel without following internal accounting controls and therefore violating SEC rules - Testifying Counsel is expected to testify about: (a) his history as FERNANDEZ's personal counsel, including negotiating FERNANDEZ's CEO Employment Agreement with ORBSAT, (b) whether and to what extent FERNANDEZ made any promises to Testifying Counsel in connection with his retention as corporate counsel, (c) the other circumstances surrounding FERNANDEZ's intended retention of Testifying Counsel as corporate counsel on June 12, 2021, (d) whether the retention was previously documented in writing or in an invoice to ORBSAT, (e) whether the terms of the retention were negotiated at arm's length and who negotiated on ORBSAT's behalf, and (f) what efforts were undertaken to address any actual or potential conflicts of interest, to seek disinterested corporate director approval in compliance with proper corporate governance practices, and to satisfy with internal accounting controls mandated by federal law.

(2) Testifying Counsel is also a Fact Witness Concerning the **Pretextual** Reason for SEIFERT's Termination as He and SEIFERT were Victims of the Same Email Phishing Scheme: ORB SAT claims it terminated SEIFERT for failing to detect an email phishing scheme and thereby negligently issuing a $45,000 wire transfer using an email hacker's false wire instructions. SEIFERT maintains that this stated reason for terminating his employment is contrived and pretextual because (a) SEIFERT was threatened with termination for objecting to FERNANDEZ's demand to violate federal law before the phishing attack had been discovered, and (b) SEIFERT

was not the only person duped by the email scheme, as Testifying Counsel appears to have been similarly duped by the hacker (yet remains employed by ORBSAT) — making Testifying Counsel a witness for this second reason.

Regarding ORBSAT's pretextual reason for terminating SEIFERT on June 22, 2021, and whether SEIFERT acted reasonably under the circumstances, Testifying Counsel is expected to testify about: (a) his own experience in being victimized by the same email phishing scheme when Testifying Counsel sought to transfer his own funds to invest in ORBSAT, (b) the similarity of the occurrences, (c) whether he acted reasonably under the circumstances, and (d) FERNANDEZ's reaction upon learning that Testifying Counsel had been similarly impacted by the email scheme.

The current case presents the unusual scenario in which Testifying Counsel is himself a player and participant in the facts underlying this case and he knew or should have known he was a material witness before he accepted the current representation on ORBSAT's behalf. Testifying Counsel was personally involved as a central participant in the incident that SEIFERT maintains is the true reason for his retaliatory discharge, and somewhat unbelievably was also involved in the wire transfer incident that ORBSAT offers as (pretextual) justification for SEIFERT's unlawful termination. As such, there are no set of circumstances in which Testifying Counsel is not likely to be called to testify. Nor are there any set of circumstances where the jury is not confused, or in which SEIFERT is not prejudiced, by Testifying Counsel's continued representation. Disqualification of Testifying Counsel is required.

Finally, although SEIFERT is mindful of the interests in protecting DEFENDANTS' choice of counsel, R. Reg. Fla. Bar 4-3.7 is clear that a party's choice of counsel is not without its limitations, precisely when that counsel is a participant and material witness. For months the

4

undersigned counsel has conferred with Testifying Counsel's office requesting they withdraw, Testifying Counsel has rejected the request to do so.

## SUMMARY OF PERTINENT FACTS

1. In 2015-2016, ORBSAT employed SEIFERT as an independent contractor to serve as a "CFO consultant." When his contracted services were complete, SEIFERT helped onboard his replacement and left ORBSAT on amicable terms in 2016.

2. In October of 2020, after being re-solicited to join ORBSAT, SEIFERT returned to ORBSAT to assist the company's efforts to be "uplisted" on the Nasdaq electronic trading platform and a related public offering. SEIFERT was appointed Chief Financial Officer of ORBSAT on October 19, 2020. At that time, David Phipps served as CEO of ORBSAT.

3. In March 2021, SEIFERT's CFO services and employment terms were memorialized in an interim Employment Agreement, and SEIFERT was promised improved terms, an executive level salary and company stock once ORBSAT was successfully uplisted to Nasdaq.

4. On or about May 28, 2021, in large part due to Mr. SEIFERT's assistance and efforts, ORBSAT was approved by the Nasdaq platform and successfully participated in a $14 million public offering. In recognition of his efforts, ORBSAT extended SEIFERT an improved Employment Agreement for a three-year renewable term, and an increased salary of $240,000.00 plus annual bonuses and other benefits and was also promised SEIFERT shares of company stock.

5. Under a new June 2, 2021 Employment Agreement, SEIFERT began performing tirelessly as ORBSAT's CFO, Secretary and Treasurer.

6. In early June of 2021, FERNANDEZ replaced Mr. Phipps and became ORBSAT's CEO effective June 7, 2021; Mr. Phipps remained part of the executive board as ORBSAT's President. FERNANDEZ retained Testifying Counsel as his personal counsel to negotiate his employment agreement with ORBSAT. Upon information and belief, Testifying Counsel was FERNANDEZ's longstanding personal attorney.

7. Two weeks later, on June 12, 2021, FERNANDEZ instructed SEIFERT via e-mail to remit a $25,000 retainer to attorney Testifying Counsel for purposes of retaining him as counsel for ORBSAT.  SEIFERT knew that Testifying Counsel was FERNANDEZ's personal attorney who had just weeks earlier negotiated FERNANDEZ's Employment Agreement with ORBSAT.

8. It was evident to SEIFERT that (a) FERNANDEZ's unilateral retention of his personal attorney as corporate counsel could give rise to a conflict of interest; (b) the retention had not been disclosed to or approved by ORBSAT's Board, (c) that Testifying Counsel's retention was not negotiated at arm's length nor approved by ORBSAT's Board, (d) there was no executed retainer agreement with Testifying Counsel nor any invoicing for "back up" the transfer so that it could "tie-out" in ORBSAT's books, and (e) the "back door" engagement of corporate counsel that FERNANDEZ demanded SEIFERT participate in was in violation of corporate governance and was contrary to strict internal accounting controls that ORBSAT was bound to adhere to under SEC regulations and other federal laws. Additionally, SEIFERT believed that FERNANDEZ's unilateral decision and attempt to retain Testifying Counsel as ORBSAT's counsel was in violation of ORBSAT's Bylaws.

9. As politely as he could, SEIFERT explained the forgoing to his new boss. SEIFERT refused to transfer the $25,000 to Testifying Counsel and in a respectful manner pointed

out to FERNANDEZ the impropriety of proceeding with the transaction as instructed. FERNANDEZ appeared to acknowledge that SEIFERT was correct and responded via email, stating, "No problem. I was going to use him to [redacted to preserve confidentiality]. We won't use him..."

10. Despite FERNANDEZ's recognizing that SEIFERT's objection was warranted, within hours of the email exchange, on the afternoon of Saturday, June 12, 2021, FERNANDEZ called SEIFERT unexpectedly in a conference call with Mr. Phipps, and proceeded to berate SEIFERT for having undermined FERNANDEZ's authority, engaging in "insubordination," and threatened SEIFERT with (i) immediate termination for cause, and (ii) to sue SEIFERT for "fraud" because he claimed SEIFERT was "not qualified" to be CFO of a Nasdaq-traded company.

11. FERNANDEZ then told SEIFERT that if he wanted to avoid termination, SEIFERT must immediately apologize in writing, and FERNANDEZ dictated to SEIFERT the exact verbiage of the desired apology. FERNANDEZ unequivocally stated if he did not receive the apology email by the end of the day, SEIFERT could consider himself "fired for cause." Under threat of termination, SEIFERT sent the written apology, but it soon became apparent that FERNANDEZ was set on retaliating against SEIFERT.

12. Four days later, on June 16, 2021, SEIFERT began to issue payment to Nasdaq in connection with an invoice from the May 28, 2021 uplisting. In reviewing the invoice, SEIFERT noticed a discrepancy, believing it to be mistaken as payment had already been remitted. After speaking with Nasdaq, SEIFERT learned that he, too, had fallen victim to an email phishing scheme that caused him to unknowingly issue a $45,000 wire transfer on May 27, 2021, to an incorrect bank account.

13. Upon learning this information on June 16, 2021, SEIFERT immediately reported the fraud to Mr. Phipps, ORBSAT's SEC regulatory counsel, and FERNANDEZ. Almost immediately, FERNANDEZ seized upon SEIFERT's error and set his termination in motion.

14. *Just five days after* threatening SEIFERT with termination "for cause" for objecting to FERNANDEZ's instruction that SEIFERT use ORBSAT funds to pay FERNANDEZ's personal counsel in a manner that violated federal law; on June 17, 2021, ORBSAT presented SEIFERT with a separation and severance proposal that required he respond within 3 days, no later than June 21, 2021. SEIFERT is more than 40 years old and by law must be provided 21-days to consider a severance offer.

15. On June 21, 2021, after SEIFERT refused to be coerced and bullied into immediately accepting the severance offer, FERNANDEZ and ORB SAT ratcheted up the pressure by sending SEIFERT a "Notice of Suspension of Employment" with pay pending a purported investigation of the wire transfer incident.

16. FERNANDEZ accused SEIFERT of failing to adhere to wire transfer procedures that did not exist during SEIFERT's employment, and of gross negligence, ignoring that his own personal attorney who he wanted to appoint as ORB SAT's corporate counsel may have fallen for the same scheme.

17. The suspension and investigation were short-lived, as the very next day, on June 22, 2021, SEIFERT received FERNANDEZ's Notice of Termination of Employment on the same pretextual grounds.

18. The grounds asserted by FERNANDEZ and ORBSAT for SEIFERT's suspension and termination notices were pretextual, and a cover-up for his retaliatory discharge stemming

from his June 12, 2021 confrontation with FERNANDEZ over SEIFERT's refusal to cooperate in the unilateral and undocumented retention of Testifying Counsel. As stated, at the time the wire transfer was made, OBRSAT did not have procedures to which SEIFERT could adhere. Furthermore, the fact that Testifying Counsel was a victim to the same email scheme at or about the same time as SEIFERT is evidence that SEIFERT was not grossly negligent when he sent the wire transfer

19. FERNANDEZ not only sought to retain Testifying Counsel to represent ORBSAT, but Testifying Counsel was also invited to participate in the ORB SAT public offering. It is believed Testifying Counsel attempted to fund his investment by wire transferring funds to the firm underwriting the offering, Maxim Group, LLC ("Maxim").

20. On or around May 28, 2021, SEIFERT learned that FERNANDEZ invited Testifying Counsel to invest in ORBSAT and, not unlike SEIFERT, he was targeted by the email phishing scheme that impacted Testifying Counsel's transfer of investment funds to Maxim.

21. After his employment was terminated on June 22, 2021, SEIFERT sent ORBSAT a pre-suit demand seeking damages occasioned by ORB SAT's breach of his June 2, 2021 Employment Agreement. In response, ORB SAT anticipatorily filed a lawsuit against SEIFERT in state court in the proverbial "rush to the courthouse" and is anticipated to raise those claims defensively against SEIFERT in this action. *See* fn. 1. [2]

---

[2] On July 6, 2021, SEIFERT removed ORBSAT's state court action ("the Related Case") to the U.S. District Court for the Southern District of Florida, which matter is currently before the Hon. Darrin P. Gayles, and simultaneously filed a motion to transfer the that proceeding to this division. The Motion to Transfer has been fully briefed and is pending.

22. ORBSAT will seek to avoid liability to SEIFERT under the June 2, 2021 Employment Agreement by falsely claiming it was fraudulently procured by SEIFERT.

23. On July 2, 2021, SEIFERT filed the instant action seeking damages for retaliatory discharge and for breach of contract damages under the June 2, 2021 Employment Agreement, among other claims.

24. In the Related Case and in this proceeding, SEIFERT maintains that his termination was in retaliation for his refusal to make the $25,000 payment to retain Testifying Counsel as FERNANDEZ directed on June 12, 2021, and for his having objected on the grounds that the transaction was in violation of corporate governance, internal accounting controls, and federal law. SEIFERT also maintains that the grounds asserted by ORB SAT in its own lawsuit for damages in the Related Action, and that DEFENDANTS will certainly assert here as defenses, are unfounded and pretextual and the lawsuit itself is a defensive tactic and a cover-up for his wrongful termination.

25. In both the instant case and the Related Case, Testifying Counsel is expected to testify about his knowledge and first-hand participation in FERNANDEZ's efforts to retain him as counsel for ORBSAT on June 12, 2021, the circumstances surrounding the retention. Testifying Counsel's testimony in this area will directly bear upon SEIFERT's claims and defenses.

26. Additionally, Testifying Counsel is also expected to testify regarding his own experience with the email phishing scheme in connection with his own investment in ORBSAT and wire transfer of investment funds.  His testimony may bear upon whether the reasons offered by ORBSAT for SEIFERT's termination were justified, and whether SEIFERT's response to the fraudulent email and ensuing wire transfer were reasonable.

27. Testifying Counsel is a key witness to at least two issues that are central to the determination of the parties' competing claims, and he will likely be called as a necessary witness by one or both parties. He is impossibly conflicted and cannot be permitted to remain as counsel for DEFENDANTS, whose positions are aligned.

28. ORBSAT's Complaint in the related action (which will likely be at the crux of its as yet unasserted defenses herein) accuses SEIFERT of corporate waste and breaching his duty of care and duty of loyalty toward ORBSAT, in large part due to his failure to detect the phony email that contained the wire instructions to Nasdaq. However, these accusations fail to account for Testifying Counsel's own failure to detect the email phishing scheme just days prior. Testifying Counsel is a fact witness in this proceeding to determine what knowledge he possessed about the email phishing scheme, and whether he alerted anyone at ORBSAT.

## MEMORANDUM OF LAW

### Disqualification is Required

Testifying Counsel is a participant and necessary witness to the events underlying the claims at issue in this proceeding, and disqualification is warranted. None of the four narrow exceptions under Rule 4-3.7 are present here and Testifying Counsel must not be permitted to remain a witness while he also serves as counsel for DEFENDANTS.

"Motions to disqualify are governed by two sources of authority," the "local rules of the court in which they appear" and "federal common law." *Stone v. Bowen*, 2017 WL 3017709 (S.D. Fla. July 14, 2017) *citing to Herrmann v. GutterGuard, Inc.*, 199 Fed.Appx. 745, 752 (11th Cir. 2006). [T]he Florida Rules of Professional Conduct provide the standard for determining whether counsel should be disqualified in a given case." *Young v. Achenbauch*, 136 So. 3d 575, 580 (Fla.

2014) (*citing State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991). The Florida Rules of Professional Conduct and case law governing disqualification of counsel militate in favor of disqualification of Testifying Counsel.

### Testifying Counsel May Not Participate as Necessary Witness and Attorney for DEFENDANTS

Florida Rule of Professional Conduct 4-3.7 governs disqualification for a lawyer who is also a witness. That Rule provides:

> (a) When Lawyer May Testify. A lawyer shall **not** act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
>
> (3) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (4) disqualification of the lawyer would work substantial hardship on the client.
>
> (emphasis added).

"The focus of the analysis under Rule 4-3.7 is on the prejudice to the client, not prejudice to the opposing side who may call the attorney as a witness." *Etkin & Co., Inc. v. SDB LLC*, 2012 WL 5398966 (S.D. Fla. 2012) quoting *Shaw v. Cassel*, No. 11-23689—CIV, 2012 WL 315050, at *5 (S.D.Fla. Feb.1, 2012), (citing *AlliedSignal Recovery Trust v. AlliedSignal, Inc.,* 934 So.2d 675, 678 (Fla. 2d DCA 2006)); *Breckenridge Pharm. v. Metabolite Lab., Inc.*, No. 04-80090—CIV-Cohn 2007 WL 433084, *3 (S.D.Fla.2007). Rule 4-3.7(a)(4) "recognizes that a balancing is

required between the interests of the client and those of the tribunal and the opposing party." *Etkin & Co., Inc. v. SDB LLC*, 2012 WL 5398966, at *5.

Although disqualification is considered an extraordinary measure, and such motions are generally viewed with skepticism because they are often made for tactical purposes, disqualification is proper if counsel is deemed a "necessary witness." Id. citing Breckenridge *Pharm. v. Metabolite Lab., Inc.*, No. 04-80090—CIV—Cohn 2007 WL 433084, *2 (S.D.Fla.2007); *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1348 (S.D. Fla. 2011)(granting disqualification if case goes to trial because attorney's testimony did not relate to a formality but to a contested issue pertaining to employer's stated reasons for retaliatory discharge under FLSA); *Foster-Thompson , LLC v. Thompson*, 2006 WL 269979 (M.D. Fla. Feb. 3, 2006)(disqualifying counsel for defendant as he is " an indispensable witness as to the activities and intentions" of his client and is likely to be an important witness at trial) see also *Allstate Ins. Co. v. English*, 588 So.2d 294, 295 (Fla. 2d DCA 1991); *Laura McCarthy, Inc. v. Merrill—Lynch Realty/Cousins, Inc.*, 516 So.2d 23 (Fla. 3d DCA 1987).

Florida state courts define a necessary witness as a "central" or "indispensable" witness. See, e.g., *Flietman v. McPherson*, 691 So.2d 37 (Fla. 2d DCA 1997); *City of Lauderdale Lakes v. Enter. Leasing Co.*, 654 So.2d 645 (Fla. 4th DCA 1995); *Eccles v. Nelson*, 919 So. 2d 658 (Fla. 4th DCA 2006) (denying petition for certiorari from order disqualifying attorney from representing witness at trial of will contest where attorney prepared the contested will and supervised its execution). Where, as here, counsel's testimony does not relate solely to a matter of formality or to the value of legal services rendered but relates to causation and to an employer's stated reasons for taking an alleged retaliatory action, disqualification is appropriate. *Suchite*, *supra*.

A party may not avoid disqualification by purposely failing to call his attorney as a fact

13

witness. Under Rule 4-3.7, "disqualification is **required** when counsel `ought' to appear as a witness." (emphasis added). *Florida Realty Inc. v. General Development Corp.*, 459 F. Supp. 781, 785 (S.D. Fla. 1978). Moreover, an attorney called by the opposing party may be disqualified "if the attorney's testimony will be `sufficiently adverse to the factual assertions or account of events offered on behalf of the client.'" *Alto Construction Co., Inc. v. Flagler Const. Equipment, LLC*, 22 So. 3d 726 (Fla. 2d DCA 2009).

In light of (a) Testifying Counsel's central role as the would-be recipient of the $25,000 legal retainer that SEIFERT objected to, and that resulted in SEIFERT's termination, and (b) the fact Testifying Counsel was also victimized by the same email phishing scheme that DEFENDANTS cite as the reason for terminating SEIFERT's employment (while simultaneously retaining Testifying Counsel), his testimony would be necessary in this case, is likely to assist SEIFERT in undermining DEFENDANTS' position in respect to one or both of the key issues, and he must be disqualified from the representation

In *Larkin v. Pirthauer*, an attorney was properly disqualified from representing the personal representative in a will contest, where the attorney had prepared and witnessed the contested will, and therefore, would be witness on matters of substance at trial. 700 So.2d 182, 183 (Fla. 4th DCA 1997) ("Given counsel's involvement in the preparation and execution of the will, and the issues which will be involved in the will contest ... we conclude that the trial court was correct in disqualifying counsel."). The facts surrounding Testifying Counsel's involvement in the phishing scheme is a central issue to DEFENDANTS' anticipated defenses (and possible counterclaim) against SEIFERT's claims herein.

### Testifying Counsel's Firsthand Knowledge Will Unduly Advantage DEFENDANTS and Prejudice SEIFERT

Additionally, Testifying Counsel's disqualification is necessary due to his first-hand

14

knowledge of the events surrounding DEFENDANTS' termination of SEIFERT, the unfair advantage gained by ORBSAT, and the likely prejudice to SEIFERT. *Kobarid Holdings, S.A. v. Reizen*, 2005 WL 8169268 *9 (S.D. Fla. April 1, 2005). In *Kobarid*, counsel for defendant was disqualified based upon his involvement in activities that were to be the subject of testimony at trial. In disqualifying counsel, the court cited the rationale of a Second Circuit case that was instructive::

> An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial. If the attorney is in a position to be a witness, ethical codes may require him to withdraw his representation.
>
> Even if the attorney is not called, however, he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question. For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination. See *United States v. McKeon*, 738 F.2d 26, 34-35 (2d Cir. 1984) (requiring disqualification where attorney would be essentially acting as both an advocate and a witness); *United States v. Cunningham*, 672 F.2d 1064, 1075 (2d Cir. 1982) (upholding disqualification where an attorney would act as an unsworn witness for defendant).
>
> .... When an attorney is an unsworn witness ... the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired. Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced.

*Id*. at *9-10 (citing *United States v. Locascio*, 6 F.3d 924, 932 (2nd Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994))(some citations omitted in original).

Here, Testifying Counsel has firsthand participation and knowledge regarding FERNANDEZ's intended retention of his firm on June 12, 2021 to which SEIFERT objected, and

which set the table for his retaliatory termination. Additionally, Testifying Counsel is believed to have firsthand knowledge of the email phishing scheme that SEIFERT fell victim to and that DEFENDANTS cited (pretextually) in terminating SEIFERT's employment. As in *Kobarid*, even if not called to testify himself, Testifying Counsel is likely, through his examination of witnesses, to "convey to the jury his personal knowledge" of the events in question, and give DEFENDANTS an "unfair advantage, because the attorney may subtly, and even unintentionally, impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination." *Id.* at *10.

Finally, this Motion is brought in good faith and is not intended to hinder, thwart or delay this proceeding. The matter has not substantially progressed, and discovery is at its infancy, and DEFENDANTS cannot assert any prejudice in connection with the timing of this Motion. Indeed, SEIFERT timely notified DEFENDANTS of the grounds for disqualification and that this Motion was forthcoming not long after this case commenced. WHEREFORE, considering all the foregoing, Plaintiff, THOMAS SEIFERT respectfully request this Honorable Court enter an Order disqualifying Gary S. Phillips, Esq. and his law firm from representing Defendants, ORBSAT CORP. and CHARLES M. FERNANDEZ in this proceeding, and for such other and further relief this Court deems just and proper.

Dated this 29th day of April, 2022.

Respectfully submitted,

| | |
|---|---|
| **DAVIS GOLDMAN, PLLC** | **SAENZ & ANDERSON, PLLC** |
| *Counsel for SEIFERT* | *Counsel for SEIFERT* |
| 1441 Brickell Avenue, Suite 1400 | 20900 N.E. 30th Avenue, Ste. 800 |
| Miami, FL 33131 | Aventura, Florida 33180 |
| Telephone: (305) 800-6673 | Telephone: (305) 503-5131 |
| Facsimile: (305) 675-7880 | Facsimile: (888) 270-5549 |
| | |
| By: /s/Jason N. Goldman | By: s/Tanesha W. Blye |

| | |
|---|---|
| JASON N. GOLDMAN<br>Fla Bar No. 72527<br>Email: jgoldman@davisgoldman.com<br>Secondary Email:<br>eservice@davisgoldman.com | TANESHA WALLS BLYE<br>Fla Bar No. 0738158<br>Email: tblye@saenzanderson.com<br>Secondary Email:<br>ursula@saenzanderson.com |
| MAIDENLY MACALUSO<br>Fla. Bar No. 990728<br>Email: mmacaluso@davisgoldman.com<br>Secondary Email:<br>eservice@davisgoldman.com | R. MARTIN SAENZ<br>Fla Bar No. 640166<br>Email: msaenz@saenzanderson.com<br>Secondary Email:<br>ursula@saenzanderson.com |

**CERTIFICATE OF COUNSEL**

Pursuant to Local Rule 7.1(a)(3), counsel for the movant has conferred with counsel for Defendants in a good faith effort to resolve the issues raised in this motion and is authorized to state that Defendants *oppose* the relief sought herein.

17

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by Electronic Service via the CM/ECF system on April 29, 2022 on all counsel or parties of record on the Service List below.

By: */s/Jason N. Goldman*
      JASON N. GOLDMAN

## **SERVICE LIST**

Gary S. Phillips, Esq.
George N. Andrews, Esq.
**PHILLIPS, CANTOR & SHALEK, P.A.**
*Counsel for ORBSAT CORP & FERNANDEZ*
Presidential Circle
4000 Hollywood Boulevard, Suite 500-N
Hollywood, Florida 33021
Telephone: (954) 966-1820 / Fax: (954) 414-9309
Email (s): Primary: gphillips@phillipslawyers.com;
gandrews@phillipslawyers.com


Tanesha Walls Blye, Esq.
R. Martin Saenz, Esq.
**SAENZ & ANDERSON, PLLC**
*Co-Counsel for SEIFERT*
20900 N.E. 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
Email: tblye@saenzanderson.com;
msaenz@saenzanderson.com
Secondary Email: ursula@saenzanderson.com