UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:21-cv-22436-DPG

NEXTPLAT CORP., *f/k/a* ORBSAT CORP.,
a Nevada corporation,

    Plaintiff,

v.

THOMAS SEIFERT,

    Defendant.

Case No.: 1:21-cv-22436-DPG
[Lead Case]

_____

THOMAS SEIFERT,

    Counter-Plaintiff,

v.

NEXTPLAT CORP., *f/k/a* ORBSAT CORP.,
a Nevada corporation,

    Counter-Defendant,

and

CHARLES M. FERNANDEZ,

    Consolidated-Defendant.

Case No.: 1:21-cv-22410-DPG
[Consolidated Case]

_____/

## SECOND AMENDED COMPLAINT

Plaintiff, NextPlat Corp., *f/k/a* Orbsat Corp., ("NextPlat" or the "Company"), sues Defendant, Thomas Seifert ("Seifert"), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the requirement of complete diversity is satisfied.

2. Seifert is an individual residing in Douglas County, Colorado and is *sui juris*.

3. NextPlat, is a Nevada corporation with its headquarters in Miami-Dade County, Florida and otherwise doing business in Miami-Dade County, Florida.

4. On July 6, 2021, this action was removed by Seifert from the 11th Judicial Circuit Court in and for Miami-Dade County, Florida to this venue.

5. All conditions precedent have been performed, occurred, or have been waived.

6. NextPlat retained the undersigned law firm and agreed to pay it a reasonable fee for representing the Company in this matter.

## GENERAL ALLEGATIONS

7. On March 11, 2021, NextPlat and Seifert entered into an Employment Agreement (the "March Agreement") whereby Seifert agreed to serve as NextPlat's Chief Financial Officer ("CFO"). A copy of the March Agreement is attached hereto as **Exhibit "A."**

8. Seifert agreed to serve as CFO in accordance with the Company's policies and procedures and in a manner that is commensurate with the duties, responsibilities, and authority of the office of CFO.

9. As CFO, Seifert was responsible for safeguarding company assets and maintaining a contemporary system of internal controls over financial transactions.

10. At the time Seifert assumed the duties and responsibilities of CFO, NextPlat maintained procedures for wiring company funds to vendors and industry partners.

11. Pursuant to NextPlat's wire procedures, all outgoing wire payments were required to be preceded by NextPlat's receipt of an invoice from a known vendor/supplier.

12. Regardless of vendor, all outgoing wires are required to be approved by two Company officers.

13. Recurrent wire transactions were expected to be established as a template with NextPlat's bank.

14. However, in the event a supplier or vendor advised the Company of a change in wire routing and account information, the following procedures were required to be followed.

    a. Upon receipt of an invoice requiring payment by wire to a bank account not previously established in NextPlat's banking system, the NextPlat employee responsible for authorizing the wire must call the accounting department of the requesting company.

    b. The authorizing employee must dial a phone number verified through the requesting vendor's known website. The authorizing employee may not rely on contact information within any email from the requesting party.

    c. Upon contacting the vendor's accounting department, the authorizing employee is required to confirm both the validity of the requested wire and the accuracy of the instructions.

15. NextPlat's bank, PNC Bank, was aware of the Company's procedures and was prepared to enforce safeguards against transmission of any wire payment that were not fully authorized by two NextPlat officers.

**Seifert circumvents NextPlat's safeguards**.

16. Not long after being named CFO, Seifert opened an account at Bank of America and transferred NextPlat funds into that account.

17. Notwithstanding NextPlat's efforts to institute rigorous wire policies, and unbeknownst to NextPlat's Board of Directors (the "Board"), Seifert set up the wire transfer procedures at Bank of America so that only his authorization was required to initiate a wire.

**NextPlat's listing efforts with Nasdaq**.

18. At the outset of 2021, NextPlat was taking active steps to elevate its listing status with the Nasdaq stock exchange.

19.     In connection with its uplisting effort, NextPlat was working with Donohoe Advisory Associates, LLC ("Donohoe Advisory").

20.     On February 17, 2021, NextPlat successfully wired $5,000.00 to Nasdaq in partial payment of Nasdaq's listing application fee.

21.     A template was set-up in NextPlat's banking system to accommodate future wire payments to Nasdaq.

22.     On May 26, 2021, Donohoe Advisory advised Seifert that the balance owed on Nasdaq's listing fee was $45,000.00.

**Seifert' email is compromised and he is made aware of active efforts to scam the Company**.

23.     In early May of 2021, Seifert's NextPlat email account was compromised by internet scammers.

24.     Upon information and belief, Seifert caused his email account to be compromised by surrendering, unwittingly, his username and password to the scammers.

25.     Throughout May of 2021, the scammers monitored his account and gained access to Seifert's email traffic, revealing sensitive information about NextPlat's plans, expectations, and upcoming commitments.

26.     On or about May 26, 2021, Seifert informed NextPlat's CEO, David Phipps, that he recently received a number of suspicious emails.

27.     Mr. Phipps warned Seifert to treat all emails with "extreme caution" going forward.

28.     Mr. Phipps also advised Seifert to change his email password and, pursuant to Company policy, immediately set up an additional safeguard on his email account in the form of a multi-factor authentication protocol.

29.     Seifert ignored Mr. Phipps's precautionary measures.

30.     On the morning of May 27, 2021, Mr. Phipps received an email from someone

4

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

purporting to be from CNP Consulting, LLC ("CNP"), demanding payment of $7,500.00 be sent to a previously unknown bank account.

31. Mr. Phipps was suspicious of the email's origins because it was not consistent with prior known emails received from CNP. Further, the bank account identified in the email was not in CNP's name.

32. Upon examination, Mr. Phipps noticed that the sender's email address had been disguised to mimic an email address used by an actual employee at CNP.

33. Mr. Phipps contacted CNP directly and confirmed his suspicion that the email was a fraudulent attempt to dupe NextPlat into wiring funds to a scammer.

34. Attached to the fraudulent email was an altered version of an invoice that had been previously sent by the consultant to Seifert's email address.

35. Based on the above, Mr. Phipps suspected that Seifert's email account had been compromised, allowing scammers to intercept and edit the consultant's invoice to provide the appearance of legitimacy.

36. On May 27, 2021, Mr. Phipps called to warn Seifert that his email had been compromised.

37. During the call Mr. Phipps detailed a series of security measures that Seifert needed to immediately take to safeguard the Company.

38. These cyber security measures included: (1) immediately changing Seifert's email password; (2) isolating Seifert's computer and phone from the Company's network pending evaluation by NextPlat's cyber security specialist; (3) replacement of Seifert's computer and phone (at the Company's expense); and (4) consultation with Hector Delgado, an NextPlat Board member with law enforcement experience.

39. Seifert did not undertake any of the precautions prescribed by Mr. Phipps and

5

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

continued to operate as if there was no risk to the Company.

**<u>Seifert's choices open the door to the scammers.</u>**

40. On May 27, 2021, Seifert received an email ("Phony Email") from an individual posing as an official with Nasdaq.

41. The imposter's email address was "michael.wolf@nasd**s**aq.**net**" instead of Michael.wolf@nasdaq.**com** (emphasis added).

42. Two other email addresses that were copied on the Phony Email were also deliberately misspelled to mimic actual emails of employees of Donohoe Advisory. Instead of the correct email suffix "advisory.com," both emails end with "adviso**i**ry.com." (emphasis added).

43. Further, the body of the Phony Email contains numerous red flags as to its fraudulent origin and false nature. For example, the Phony Email, on its face, appears careless and unprofessional. It lacks any Nasdaq logo or that of any other authorized company.

44. The Phony Email is riddled with grammatical errors and contains three (3) mis-capitalized words, including "The" and "Am" and lacks simple punctuation such as periods.

45. Additionally, the imposter/sender of the Phony Email demonstrated a complete lack of familiarity with basic western business norms by referring to Seifert as "Mr. Tom" instead of his surname.

46. In addition to the surface signs of fraud, the message of the Phony Email is suspicious and should have prompted Seifert to investigate further.

47. Specifically, the Phony Email refers to a supposed mishap involving an incorrectly entered bank account number.

48. The scammer's message included new wire instructions and demanded "Payment" be sent "today."

49. The imposter directed questions to a cell phone number with a Niagara Falls area

6

Phillips, Cantor & Shalek, P.A.; Tel: (954) 966-1820 Fax: (954) 414-9309
Presidential Circle, 4000 Hollywood Boulevard, Suite 500-North, Hollywood, Florida 33021

code instead of a business phone. The real Michael Wolfe is based in Bethesda Maryland.

50. Despite these red flags, and despite the warnings and security measures prescribed by Mr. Phipps' to thwart the active measures being taken against NextPlat, Seifert made no attempt to gather additional information or involve anyone at NextPlat to investigate.

51. Instead, Seifert rewarded the scammer's efforts by initiating the $45,000.00 from the Bank of America single authorization bank account he previously established.

52. Had Seifert made a cursory effort to verify the wire request with Nasdaq, he would have discovered the fraudulent nature of the Phony Email.

53. Had Seifert not circumvented the wire safeguards put in place by NextPlat at PNC, the fraudulent wire could have been stopped.

54. In the process of sending the wire, Seifert disclosed confidential banking information to the scammers.

55. Immediately after Seifert authorized the wire, he failed to contact Nasdaq to confirm the wire's receipt.

56. Had Seifert timely learned that Nasdaq did not receive the wire, he could have called the recipient bank to place a hold on the account and investigate the fraudulent account. He did not.

57. On June 7, 2021, Nasdaq contacted Seifert by email and inquired as to the outstanding balance for the uplisting application fee. Again, Seifert took no action to determine why the $45,000.00 had not been received by Nasdaq.

58. Had he done so, he would have learned of the scam, which would have allowed for an immediate investigation.

**Seifert obstructs NextPlat's attempts to investigate the email scam**.

59. On June 16, 2021, Seifert received a call from Nasdaq concerning the balance of

7

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

the still outstanding uplisting fee.

60. Following this call, Seifert finally disclosed to Mr. Phipps that he wired $45,000.00 to the email scammer in response to the Phony Email.

61. Seifert speculated that Nasdaq's email system had been hacked. It had not.

62. Mr. Phipps asked Seifert to forward a copy of the Phony Email in connection with the Company's investigation, but Seifert never complied.

63. Subsequently, Seifert failed to respond to repeated telephone and email requests for information from senior management in connection with NextPlat's investigation.

64. Due to Seifert's misconduct, all of the safeguards NextPlat implemented and maintained to avoid being scammed were nullified, resulting in a $45,000.00 loss to NextPlat.

65. Upon learning of Seifert's misconduct in connection with the email scam, NextPlat promptly began reviewing Seifert's work.

66. As result of its review, NextPlat discovered that Seifert was responsible for several fraudulent misrepresentations and non-disclosures to the Board.

**Seifert misleads the Board**

67. Following NextPlat's May 27, 2021, Nasdaq listing, Seifert was asked to research potential award of 795,000 shares of stock ("Stock Issue") for the Company's directors and officers, which included 175,000 shares ("Seifert Stock Award") issuable to Seifert.

68. Thereafter, Seifert assured NextPlat's CEO and Chairman that he had carried out the necessary research on the matter of the Stock Issue and had received the approval of the Company's attorney, Ralph V. De Martino of Schiff Hardin, LLP.

69. As a result of Seifert's assurance, the Board convened a telephonic meeting on June 2, 2021 to approve, among other things, Seifert's Stock Award.

70. During the meeting, Seifert assured the Board that he had conferred with Mr. De

Martino prior to the meeting and obtained his approval to move forward with the Stock Award.

71. Unbeknownst to the Board, Seifert's statement was false.

72. The meeting proceeded, and the Board approved, by resolution, all items on the agenda, including Seifert's Stock Award.

73. At the close of the meeting, the Board asked Seifert to prepare all Securities and Exchange Commission ("SEC") required disclosures in connection with the Stock Issue.

74. On June 5, 2021, Mr. De Martino was asked to review the Form 8-K prepared by Seifert in connection with the Stock Issue.

75. Upon receipt of the draft Form 8-K, Mr. De Martino immediately informed the Board that prior to the Board meeting he instructed Seifert that the Stock Issue should **not** be proposed to the Board under any circumstances since it had not been disclosed in the Company's SEC Form S-1.

76. Mr. De Martino further advised the Board that the Company had insufficient shares to issue under its incentive plan and that Seifert was previously aware of this fact.

77. Additionally, Mr. De Martino cautioned the Board that before any shares were issued to Directors or Officers, a new executive incentive plan would need to be approved by the Board, a fact that Seifert should have also been aware of.

78. As a result of Mr. De Martino's advice, the Board agreed that the resolution approving the Stock Issue was improper because it was based on Seifert's false information.

**Seifert misleads the Board in connection with his employment agreement**.

79. On May 28, 2021, the Company disclosed, by way of its Form 8-K filing, that certain individuals joined the Company as members of the Board of Directors.

80. Seifert took advantage of the change in the Board of Directors.

81. During the same period, May-June 2021, as NextPlat was preparing for a new

9

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

Board, Seifert insisted that NextPlat enter into a new employment agreement with him.

82. Since NextPlat has a pending registration statement relating to the Company's recent public offering, Seifert knew that his contract would need to go through an audit review, underwriting review, and a legal review by counsel for NextPlat.

83. Seifert had possession of his own unapproved and unreviewed draft executive employment agreement, to which he requested several of his own edits ("Unsanctioned Employment Agreement").

84. On June 1, 2021, at 5:01 p.m., Seifert emailed a draft executive employment agreement for another officer to Mr. De Martino for his review and approval.

85. Prior to the Meeting of the Board, <u>Seifert failed to send his</u> Unsanctioned Employment Agreement to Mr. De Martino, nor did he submit the Unsanctioned Employment Agreement for audit and underwriting review.

86. On June 1, 2021, at 6:58 p.m., Seifert emailed several draft employment agreements—including his own Unsanctioned Employment Agreement—to the Board.

87. On June 2, 2021, at the same Board meeting that Seifert used to mislead the Board about the Stock Issue, Seifert presented several executive employment agreements for Board approval, including his own Unsanctioned Employment Agreement.

88. During the meeting, Seifert misrepresented to the entire Board that his Unsanctioned Employment Agreement was reviewed and approved by Mr. De Martino.

89. As CFO, Seifert knew that he was responsible for putting his Unsanctioned Employment Agreement through underwriting, audit, and corporate counsel review.

90. For example, before NextPlat voted on employing a new Executive Chairman of the Board, Seifert saw to it that the contract was reviewed by the underwriters, auditors, and corporate counsel.

10

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

91. Based on Seifert's misrepresentations, NextPlat approved his Unsanctioned Employment Agreement. A copy of the executed Unsanctioned Employment Agreement is attached hereto as **Exhibit "B."**

**Seifert seeks to hide the truth to the end**.

92. On June 21, 2021, NextPlat notified Seifert by letter that had been suspended with pay pending an investigation of his actions in connection with the Phony Email.

93. As part of the suspension notice, Seifert was advised that NextPlat expected him to cooperate with the Company's investigation.

94. Instead of cooperating, Seifert immediately responded to NextPlat's leadership in indignant fashion, accusing NextPlat of falsifying its reasons for suspending him in a bid to justify his termination for cause.

95. Seifert's letter ends by threatening litigation, writing "any court will agree" that NextPlat's suspension was in retaliation for his "refusal to toe the line…"

96. By rejecting cooperation, accusing NextPlat of deceit, and threatening legal action, Seifert confirmed that he was unfit to fulfill the duties of CFO.

97. Accordingly, on June 22, 2021, NextPlat notified Seifert by letter that he was terminated, in all capacities, for cause. In its termination letter, NextPlat expressly directed Seifert to promptly arrange for the return of all Company property, including corporate records.

**Seifert withholds records following his termination**.

98. Following his termination, Seifert maliciously deleted documents from a SharePoint folder that had been originally created by NextPlat to allow Seifert access to important Company records.

99. Seifert also maintained important Company records in a Dropbox account, one personal and one that was shared with NextPlat.

100. Shortly after his termination, Seifert deleted all of the files, including, but not limited to, documents utilized to prepare the Company's audits, financial statements, SEC filings, reports, records, emails, all accounting/auditing files from the Dropbox account that he shared with NextPlat.

101. On June 30, 2021, NextPlat, through the parties' respective counsel, demanded that Seifert immediately return the Company records that he had removed from the shared Drobox account.

102. On July 2, 2021, Seifert's counsel responded, promising that "Mr. Seifert remains ready, willing and able to transfer to Orbsat all Orbsat materials in his *possession*."

103. According to Seifert's counsel, in addition to a significant number of electronic records, Seifert possessed paper records, including bank documents, important business mail, debit cards, as well as the origination papers from the Bank of America accounts Seifert opened.

104. Since that time, NextPlat has made numerous written demands for Seifert to surrender these and other missing records and documents.

105. Despite NextPlat's demands, Seifert has failed to surrender NextPlat's confidential corporate records.

## **COUNT I – BREACH OF FIDUCIARY DUTY**

106. NextPlat realleges paragraphs 1 through 105 *supra* as if fully set forth herein.

107. As an officer of NextPlat, Seifert owed fiduciary duties of care to NextPlat, including, but not limited to, the duty to refrain from acts or omissions which involve fraud or intentional misconduct harmful to NextPlat.

108. Seifert breached his fiduciary duties by: (1) circumventing the Company's wire procedures and banking safeguards; (2) refusing to carry-out Mr. Phipps' fraud prevention measures; (3) concealing the truth about his role in the May 27, 2021 email scam; (4) obstructing

NextPlat's investigation into the May 27, 2021 email scam; (5) flouting instructions from NextPlat's counsel, Mr. De Martino, regarding the Stock Issue; (6) misrepresenting to the Board Mr. De Martino's legal findings regarding the Stock Issue, and by extension, the Seifert Stock Award; and (7) misrepresenting to the Board the review and approval status of his Unsanctioned Employment Agreement.

109. Seifert's breaches of his fiduciary duties are the proximate and legal cause of substantial damages incurred by NextPlat, including, but not limited to, the loss of $45,000.00 in connection with the May 27, 2021 email scam; costs associated with the NextPlat's investigation of Seifert's actions in connection with the May 27, 2021 email scam; monetary losses and expenses in connection with the Seifert Stock Award; payment of additional undue compensation to Seifert under the Unsanctioned Employment Agreement; and costs associated with searching for and obtaining substitute CFO services on an expedited basis.

WHEREFORE, Plaintiff, NextPlat Corp., demands judgment against Defendant, Thomas Seifert, for monetary damages, pre-judgment and post-judgment interest, costs, and attorneys' fees, as permitted under applicable law.

**COUNT II – BREACH OF THE UNSANCTIONED EMPLOYMENT AGREEMENT**

110. NextPlat realleges paragraphs 1 through 105 *supra* as if fully set forth herein.

111. Section 2 of the Unsanctioned Employment Agreement states that Seifert "shall serve as Chief Financial Officer, Secretary and Treasurer of the Corporation, with such duties, responsibilities, and authority as are commensurate and consistent with his position, as may be, from time to time, assigned to him."

112. As CFO and Treasurer of NextPlat, Seifert was responsible for upholding NextPlat's policies and procedures, as wells as ensuring the implementation of up-to-date and adequate controls to safeguard the Company's finances.

113. Seifert failed to fulfill his duties and responsibilities as CFO and Treasurer of NextPlat by failing to: (1) adhere to NextPlat's wire and banking policies and procedures; (2) employ an adequate level of control over Company finances; (3) undertake and/or implement necessary anti-fraud measures; (4) exercise the necessary due diligence in protecting NextPlat funds; (5) cooperate with and advance NextPlat's efforts to investigate the May 27, 2021 email scam; and (6) properly research the criteria and conditions necessary for the Stock Issue.

114. As Secretary, Seifert was responsible for managing Board meetings, providing the Board with accurate information regarding corporate activities, conditions, and plans, maintaining adequate corporate records, and facilitating suitable corporate communications.

115. As Secretary, Seifert was also responsible for safeguarding NextPlat's confidential information, such as its business plans and passwords.

116. Seifert failed to fulfill his duties and responsibilities as Secretary by: (1) failing to share critical legal advice provided to him by Mr. De Martino; (2) disclosing NextPlat's confidential information to fraudsters; (3) scheduling a meeting of the Board without adequate or accurate information; (4) establishing an agenda for a Board meeting without adequate or accurate information; (5) holding a Board meeting without adequate or accurate information; and (6) failing to provide adequate or accurate information to the Board regarding the Stock Issue.

117. Under section 8(c) of the Unsanctioned Employment Agreement, Seifert owed NextPlat a post-termination duty to "deliver forthwith" any original or duplicate confidential Company records/information, including electronic versions of same, in his possession.

118. As of the filing of this pleading, Seifert continues to possess, and refuses to surrender, confidential Company records/information, which is of great value to NextPlat.

119. Further, under section 8(d) of the Unsanctioned Employment Agreement, Seifert owed NextPlat a post-termination duty to fully cooperate in all matters relating to the winding up

14

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

or pending work on behalf of the Company…"

120. As of the date of his termination and even prior thereto, Seifert refused to cooperate in accordance with section 8(d) of the Unsanctioned Employment Agreement.

121. Seifert's breaches of his official responsibilities and post-termination duties are the proximate and legal cause of substantial damages to NextPlat, including, but not limited to, the loss of $45,000.00 in connection with the May 27, 2021 email scam; monetary losses and expenses incurred in connection with the Seifert Stock Award; payment of additional undue compensation to Seifert under the Unsanctioned Employment Agreement; costs associated with delays and added work stemming from Seifert's unauthorized retention of confidential corporate records, and expenses associated with replacing Seifert's work on an expedited basis.

WHEREFORE, Plaintiff, NextPlat Corp., demands judgment against Defendant, Thomas Seifert, monetary damages, and all pre-judgment and post-judgment interest, costs, attorneys' fees, as permitted under applicable law, and, to the extent it is deemed legally necessary, for rescission of the Seifert Stock Award.

## COUNT III – FRAUDULENT INDUCEMENT

122. NextPlat realleges paragraphs 1 through 105 *supra* as if fully set forth herein.

123. Seifert fraudulently induced NextPlat to enter into the Unsanctioned Employment Agreement by misrepresenting to the Board that the Unsanctioned Employment Agreement had been vetted and approved pursuant to the Company's underwriting review, audit review, and corporate counsel review process.

124. Seifert fraudulently induced NextPlat to issue a resolution approving the Seifert Stock Award by misrepresenting to the Board that NextPlat's legal counsel had authorized and approved the Stock Issue.

125. Contrary to Seifert's misrepresentations, NextPlat's legal counsel advised Seifert

that the Stock Issue should <u>not</u> be proposed to the Board pending compliance with applicable disclosure requirements.

126. Seifert knew that his false statement of material fact was indeed false, as he knew his own Unsanctioned Employment Agreement and request for additional stock was never approved and never underwent the required audit review, underwriting review, and legal review.

127. Seifert intended that the Board rely on his misrepresentations and false statements, to induce NextPlat to approve and execute his Unsanctioned Employment Agreement and the Seifert Stock Award.

128. The Board relied on Seifert's misrepresentations and false statements to its detriment.

129. Seifert's fraudulent inducement caused NextPlat injury through, among other things, monetary losses and legal expenses incurred in connection with the Seifert Stock Award, payment of additional undue compensation to Seifert under the Unsanctioned Employment Agreement, and expenses associated with replacing Seifert's work on an expedited basis.

WHEREFORE, Plaintiff, NextPlat Corp., demands judgment against Defendant, Thomas Seifert, monetary damages, and all pre-judgment and post-judgment interest, costs, attorneys' fees, as permitted under applicable law, and, to the extent it is deemed legally necessary, for rescission of the Seifert Stock Award.

## COUNT IV – FRAUDULENT MISREPRESENTATION

130. NextPlat realleges paragraphs 1 through 105 *supra* as if fully set forth herein.

131. Seifert made false statements to NextPlat concerning material facts.

132. Specifically, Seifert falsely represented to the Board that his Unsanctioned Employment Agreement had been vetted and approved via the Company's underwriting review, audit review, and corporate counsel review.

16

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

Case No.: 1:21-cv-22436-DPG

133. Seifert also falsely represented to the Board that NextPlat's counsel authorized and approved the Stock Issue, and by extension, the Seifert Stock Award.

134. Finally, Seifert made affirmative misrepresentations on the Questionnaire for Officers and Directors that he submitted on April 28, 2021.

135. For example, Seifert answered "no" when asked if he had served as a Director of any publicly held entity other than the Company, during the last 5 years.

136. Contrary to that answer, Seifert served as a Director for IPG Photonics Corporation, a publicly traded company that is listed on the Nasdaq stock exchange.

137. Seifert knew that his representations were false.

138. Seifert intended to induce the Board to act on his misrepresentations.

139. Seifert's misrepresentations caused NextPlat injury through, among other things, losses and legal expenses incurred in connection with the Seifert's employment, payment of additional undue compensation to Seifert under the Unsanctioned Employment Agreement, and expenses associated with replacing Seifert's work on an expedited basis.

WHEREFORE, Plaintiff, NextPlat Corp., demands judgment against Defendant, Thomas Seifert, monetary damages, and all pre-judgment and post-judgment interest, costs, attorneys' fees, as permitted under applicable law, and, to the extent it is deemed legally necessary, for rescission of the Seifert Stock Award.

## COUNT V – CONSTRUCTIVE FRAUD

140. NextPlat realleges paragraphs 1 through 105 *supra* as if fully set forth herein.

141. The Unsanctioned Employment Agreement and the Seifert Stock Award were obtained by fraud.

142. Seifert took unconscionable advantage by concealing material information from NextPlat.

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021

143. Specifically, Seifert took improper advantage of his position of trust by failing to make full and fair disclosures in connection with the approval of his Unsanctioned Employment Agreement and the Stock Issue, at the expense of NextPlat.

144. NextPlat relied upon the Seifert's omissions.

145. Plaintiff has no adequate remedy at law and demands rescission of the Seifert Stock Award, which was fraudulently and/or otherwise improperly obtained.

146. Seifert's concealment has caused NextPlat injury through, among other things, monetary losses and legal expenses incurred in connection with the Seifert Stock Award, payment of additional undue compensation to Seifert under the Unsanctioned Employment Agreement, and expenses associated with replacing Seifert's work on an expedited basis.

WHEREFORE, Plaintiff, NextPlat Corp., requests that this Court enter judgment against Defendant, Thomas Seifert, monetary damages, and all pre-judgment and post-judgment interest, costs, attorneys' fees, as permitted under applicable law, and, to the extent it is deemed legally necessary, for rescission of the Seifert Stock Award.

**PHILLIPS, CANTOR & SHALEK, P.A.**
Presidential Circle
4000 Hollywood Boulevard, Suite 500-N
Hollywood, Florida 33021
Telephone: (954) 966-1820 / Fax: (954) 414-9309

By: /s/
GARY S. PHILLIPS
Florida Bar No. 339814
gphillips@phillipslawers.com
ttrippe@phillipslawyers.com
GEORGE N. ANDREWS
Florida Bar No. 15885
gandrews@phillipslawyers.com
tmcpherson@phillipslawyers.com

Case No.: 1:21-cv-22436-DPG

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **21st day of June, 2022**, I electronically filed the foregoing with the Clerk of the United States Southern District Court using the CM/ECF e-Filing Portal. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below referenced Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

**PHILLIPS, CANTOR & SHALEK, P.A.**
Presidential Circle
4000 Hollywood Boulevard, Suite 500-N
Hollywood, Florida 33021
Telephone: (954) 966-1820 / Fax: (954) 414-9309

By: /s/ _____
GARY S. PHILLIPS, ESQ.
Florida Bar No.:339814
gphillips@phillipslawyers.com
tmcpherson@phillipslawyers.com
GEORGE N. ANDREWS, ESQ.
Florida Bar No. 15885
gandrews@phillipslawers.com
tmcpherson@phillipslawyers.com

Case No.: 1:21-cv-22436-DPG

## **SERVICE LIST**

**Jason N. Goldman, Esq.**
**Maidenly Macaluso, Esq.**
**Davis Goldman, PLLC**
*Counsel for Seifert*
1441 Brickell Avenue, Suite 1400
Miami, FL 33131
Telephone: (305) 800-6673
Facsimile: (305) 675-7880
Email: jgoldman@davisgoldman.com
Email: mmacaluso@davisgoldman.com
Secondary Email: eservice@davisgoldman.com

**Tanesha Walls Blye, Esq.**
**R. Martin Saenz, Esq.**
**Saenz & Anderson, PLLC**
*Counsel for Seifert*
20900 N.E. 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
Email: tblye@saenzanderson.com;
msaenz@saenzanderson.com
Secondary Email: ursula@saenzanderson.com

PHILLIPS, CANTOR & SHALEK, P.A.; TEL: (954) 966-1820 FAX: (954) 414-9309
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BOULEVARD, SUITE 500-NORTH, HOLLYWOOD, FLORIDA 33021