**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-22436-Civ-GAYLES/TORRES

NEXTPLAT CORP., f/k/a/ ORBSAT CORP.,

      *Plaintiff,*

v.

THOMAS SEIFERT,

      *Defendant.*

_____/

THOMAS SEIFERT,

      *Counter- Plaintiff,*

vs.

NEXTPLAT CORP f/k/a ORBSAT CORP,
a Nevada corporation,
and CHARLES M. FERNANDEZ,
individually,

      *Counter-Defendants.*

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'**
**MOTIONS TO DISMISS**

    This matter is before the Court on Defendant/Counter-Plaintiff Thomas
Seifert's ("Seifert" or "Defendant") motion to dismiss Plaintiff/Counter-Defendant
NextPlat Corporation's, formally known as Orbsat, ("NextPlat" or the "Company")
Second Amended Complaint (the "SAC"), [D.E. 74], as well as on NextPlat's motion

1

to dismiss Seifert's Counterclaims against the Company and the Company's CEO Charles M. Fernandez ("Fernandez").   [D.E. 80].[1]   Both motions have been fully briefed. [D.E. 78, 83, 82, 86].   Therefore, the motions are now ripe for disposition.[2] After careful consideration of the motions, the supporting record, the relevant authorities, and for the reasons discussed below, both motions should be **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

The claims and counterclaims giving rise to this lawsuit center around Thomas Seifert's employment with NextPlat.   Mr. Seifert, a corporate financial professional, was employed by NextPlat, a satellite communication services provider, as its Chief Financial Officer ("CFO") from October 19, 2020, through June 22, 2021.[3]   NextPlat asserts that Mr. Seifert engaged in misconduct during his tenure as CFO with the Company, and that this misconduct led to his termination.

---

[1] Given the unusual procedural standing of this consolidated action, the undersigned treats Seifert's counterclaim, which he filed with his motion to dismiss, as a proper pleading under Fed. R. Civ. P. 7.

[2] The Honorable Darrin P. Gayles referred all non-dispositive and dipositive matters to the Undersigned for proper disposition.   [D.E. 56].

[3] Prior to his role as CFO of NextPlat, Mr. Seifert had worked for the Company as a CFO consultant from 2015 to 2016 as a private contractor.   Seifert was called back by the Company's then CEO, David Phipps, in late 2020 to assist with the Company's Nasdaq uplisting and public offering efforts.   Accordingly, on March 11, 2021, the parties executed an employment agreement which, according to Seifert, would be replaced by a more substantial employment agreement once the uplisting and public offering were completed.

2

First, the Company accuses Mr. Seifert of failing to comply with NextPlat's internal money transferring procedures and safety standards in breach of his fiduciary duties as an officer of the Company. This disregard of the Company's standards and procedures, NextPlat alleges, led to Mr. Seifert falling victim of an internet phishing scam on May 27, 2021, that cost the Company $45,000 in wired funds, as well as additional related expenses. According to NextPlat, Mr. Seifert's actions enabled internet scammers to gain access to his work email account, where they learned about the Company's ongoing uplisting efforts with Nasdaq and related upcoming wire transfers. Armed with this information, the scammers were able to create a false email account and pose as Nasdaq agents, who then emailed fake wire instructions to Mr. Seifert purportedly in connection with the uplisting transaction. Mr. Seifert, believing that the scammers were who they represented to be, followed the fraudulent instructions and wired funds in the sum of $45,000 to the scammers. The Company also alleges that Mr. Seifert engaged in additional related misconduct, including delaying disclosure of the scam to his superiors.

NextPlat also accuses Mr. Seifert of engaging in fraudulent misconduct in connection with the renewal of his employment agreement and the adoption of a board resolution issuing company stock to several officer and directors, including Seifert. According to the company, Mr. Seifert engaged in fraudulent misrepresentations aimed at inducing members of the Board of Directors to approve a renewed version of his employment contract with the Company (the "June 2 Agreement"), notwithstanding the fact that this version of the agreement was never

3

fully vetted by the appropriate internal channels.   Relatedly, NextPlat also pleads that, during this same Board meeting of June 2, Seifert intentionally misled the Board into approving the issuance of shares of stock to the Company's directors and officers, including 175,000 shares issuable to Seifert ("Seifert Stock Award"), by misrepresenting that he had properly researched the proposal and that the Company's corporate outside counsel had approved the plan.   The company asserts that, taken together, these instances of professional misconduct led to the for-cause termination of Mr. Seifert's employment as the company's CFO and to this lawsuit against him alleging breach of fiduciary duty, breach of contract, and multiple related fraud counts.

Mr. Seifert, on the other hand, strongly disputes NextPlat's narrative, insisting, instead, that the Company's allegations are no more than pretextual justifications for what was an otherwise unjustified and retaliatory termination of his employment contract.   According to Mr. Seifert, the real facts giving rise to his termination took place on June 12, 2021.   On that date, NextPlat's new CEO, Charles Fernandez, instructed Mr. Seifert to issue a $25,000 retainer to hire Gary Phillips, Mr. Fernandez's long-lasting personal attorney, as counsel for the company. According to Seifert, prior to the June 12 retainer payment request, Mr. Fernandez revealed to Seifert that several of his personal friends and Company investors had been exposed to phishing wire scams in connection to the Company's public offering, and that Fernandez wished to reimburse those individuals for such potential losses. Accordingly, when Mr. Fernandez instructed Seifert to issue the $25,000 retainer to

Mr. Phillips, Seifert objected to the payment instruction, explaining to Mr. Fernandez that such payment would not only bypass corporate policies and accounting controls (including conflict of interest checks), but would also be in breach of federal regulations applicable to publicly traded companies such as NextPlat.

It appears that, faced with Mr. Seifert's resistance, Mr. Fernandez backtracked on his idea to hire Mr. Phillips as counsel for the company. However, according to Mr. Seifert, his adherence to internal policies and procedures was interpreted by Mr. Fernandez as an act of defiance and insubordination that ultimately led to his termination less than two weeks later. Indeed, Mr. Seifert asserts that his termination as CFO was nothing more than a retaliatory act by Mr. Fernandez in retribution for his refusal to approve the $25,000 payment to retain Mr. Phillips as in-house counsel. Further, Mr. Seifert insists that as soon as the company learned that he had fallen victim to the internet phishing scam – a fact that came to light on June 16, 2021, and which he reported immediately – Mr. Fernandez immediately seized upon this circumstance to set Seifert's termination in motion. Seifert asserts that the June 2 Agreement was the culmination of prior representations and promises by then-CEO Mr. Phipps and NextPlat that his initial March 11, 2021, agreement was meant to be a temporary arrangement, and that upon the Company's successful uplisting and public offering, Seifert would be protected in his CFO position for the long-term and under more competitive benefits. He also asserts that the June 2 Agreement was properly reviewed by the Company's Compensation Committee prior to approval by the Board. Based on this version of the facts, Mr. Seifert has

asserted counterclaims for breach of contract, retaliatory discharge, defamation, and negligent misrepresentation against NextPlat and Mr. Fernandez.

## II.  APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.   *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).   Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other*

6

*grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012).   The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"   *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III.   ANALYSIS

Seifert moves to dismiss all the counts in NextPlat's SAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).   Specifically, Seifert argues that: (1) NextPlat has failed to plead an injury in fact sufficient to meet Article III standing; (2) the breach of fiduciary duties claim against Seifert fails to state a plausible claim for relief under applicable Nevada law; (3) NextPlat's rescission claim with respect to the Seifert Stock Award must be dismissed because the Company's claim for damages ratifies the June 2 Agreement and, by implication, the stock award; and (4) NextPlat's fraud counts are barred by Florida's independent tort doctrine.   [D.E. 74 at 2–4].

NextPlat, on the other hand, argues that Seifert's counterclaims should be dismissed pursuant to Rule 12(b)(6) because: (1) Seifert's breach of the June 2 Agreement and retaliatory termination theories are premised on false facts; (2) Seifert is not allowed to plead breach of the March 11 Agreement in the alternative; (3) the Company's SEC disclosures reporting Seifert's termination and related litigation cannot form the basis of a defamation claim; and (4) Seifert's

negligent misrepresentation claim fails to meet the pleading requitements of Rule 9(b), and is barred by the independent tort doctrine.   We address each of these arguments below.

### 1. *Seifert's Motion to Dismiss the SAC*

### A. *Whether NextPlat Sufficiently Pleads Standing*

Seifert argues that NextPlat's SAC is a premature filing that must be dismissed at this point in time because it fails to present a "case or controversy" that is actionable by this Court.   [D.E. 74 at 7].   Seifert contends, based largely on facts outside the four corners of the complaint, that the Company has failed to plead an injury in fact because the Seifert Stock Award was ultimately rescinded by the Board and the increased compensation due to Seifert under the June 2 Agreement never materialized.   *Id.*   The Company responds that Seifert's claim lacks merit because it conspicuously ignores the multiple sources of injury alleged in the SAC, it relies on factual disputes that cannot form the basis for a motion to dismiss, and because it demands greater pleading specificity than that required by Federal Rule of Civil Procedure 8.   [D.E. 78 at 6–7].   We agree with the Company.

"To satisfy the standing requirement, a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"   *Pincus v. Am. Traffic Sols., Inc*, 986 F.3d 1305, 1310 (11th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).   When it comes to the element of injury in fact, all that a Plaintiff needs to do is point to a direct harm—whether tangible or intangible—of

8

which personal injury or financial loss are emblematic examples.   *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (noting that courts "sometimes make standing law more complicated than it needs to be").

Here, the Company does enough to meet its injury in fact pleading burden at the present stage of the proceedings: "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."   *Lujan v. Defs. of Wildlife*, 112 S. Ct. 2130, 2137 (1992).   Indeed, contrary to Seifert's views, the SAC pleads a host of specific financial losses that it attributes to Seifert's alleged misconduct.   For instance, NextPlat pleads a loss of over $45,000 in connection with Seifert's alleged breach of fiduciary duties, as well as additional tangible financial losses in the form of payments of undue compensation and reimbursements under the June 2 Agreement,[4] attorney expenses in connection with the improper stock issuance, business costs associated with Seifert's alleged retention of proprietary information, and expenses associated with replacing Seifert on an expedited basis ([D.E. 73 ¶¶ 109, 117–118, 121, 129; 78 at 6–7]).   In light of these allegations, we cannot agree with Seifert's claim that the Company's asserted damages are speculative and conjectural.   Even assuming, as he posits, that no increased salary

---

[4] Seifert's point in Reply that the Agreement's plain text seems to contradict the Company's asserted loss is well taken.   *See* [D.E. 73-2, Clause 4(a)] (providing that the increased payments would be made in "monthly installments").   The Company may very well have a hard time establishing that it paid undue compensation to Seifert in light of the fact that he was terminated just a few weeks after execution of the June 2 Agreement.   However, at this stage of the proceedings the Company need not prove its damages theories but merely state them with sufficient particularity to make them plausible, which it has done.

payments were ever made and that the stock shares were never issued to Seifert, the SAC still provides sufficient factual allegation of damages to satisfy the injury in fact requirement.

Moreover, to the extent that Seifert seeks to challenge NextPlat's version of the facts, his effort is unavailing because merely rebutting the Company's claims that these expenses were actually incurred is not an appropriate argument for a motion to dismiss.   *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ("At this stage of the litigation, we must accept [Plaintiff's] allegations as true.").   To the extent that Seifert seeks to categorize the alleged injuries as *de minims* and, therefore, insufficient to meet standing, his attack is misguided for "[f]inancial loss like [NextPlat's] is a paradigmatic example of an injury in fact that is redressable by a favorable judicial decision."   *Am. Traffic Sols., Inc*, 986 F.3d at 1310 n.7 (holding that a $7.90 loss was sufficient to establish injury in fact for the purposes of Article III standing).   Accordingly, Seifert's motion to dismiss on the basis of lack of standing should be DENIED.

### B.   *Whether the SAC Pleads a Breach of Fiduciary Duty Under Nevada Law*

Seifert next attacks the Company's claim that Seifert's alleged actions amount to a breach of his fiduciary duties.   It is undisputed that this claim is governed by Nevada law.   What the parties dispute is whether the SAC provides sufficient factual mater to state a claim that is plausible under Nevada law.   For the reasons that follow, we agree with NextPlat and find that the SAC sufficiently pleads a claim of breach of fiduciary duties.

Under Nevada law, Section 78.138 governs the exercise of power, performance duties, and liabilities to a corporation and its stockholders of directors and officers. *See* Nev. Rev. Stat. Ann. § 78.138 (West).   A Plaintiff who sues an officer of a corporation "for breach of fiduciary duty must satisfy both requirements of § 78.138(7), which provides the sole method for holding individual directors liable for corporate decisions." *Guzman v. Johnson*, 137 Nev. 126, 129–30 (2021).   That provision "requires the claimant to (1) rebut the business judgment rule and (2) demonstrate a breach of fiduciary duty involving intentional misconduct, fraud, or another knowing violation of the law."   *Id.* at 130.

In essence, Seifert argues that NextPlat's claim of breach of fiduciary duty should be dismissed because the SAC alleges nothing more than "[Seifert] failing to detect a cyber-attack," which falls short of the showing of intentional misconduct required under § 78.138(7).   [D.E. 74 at 13].   Here, again, Seifert's reading of the SAC is self-servingly shortsighted, for it overlooks the numerous allegations of overt intentional misconduct pled in the complaint.   The SAC alleges that Seifert intentionally disregarded internal policies and procedures for wiring company funds, including by unilaterally opening a Bank of America account that allowed him to circumvent the Company's two-person authorization procedure required for outgoing wire transactions.   [D.E. 73 at ¶¶ 8–17].   The SAC also asserts that Seifert consciously ignored cyber security instructions that Mr. Phipps delivered to him over the phone on the very same day in which Seifert fell victim to the email scam (*id.* ¶¶ 36–39); that Seifert concealed from his superiors the fact that he had been

scammed by the phishing email (*id.* ¶ 57); that Seifert lied to the Board of Directors on June 2 regarding the stock issuance plan and the approval of his June 2 Agreement (*id.* ¶¶ 67–89); and that Seifert refused to cooperate with the Company's investigation into his alleged misconduct (*id.* ¶¶ 93–94).

In sum, it is clear from the face of the SAC that, contrary to Seifert's claim, the Company has pleaded sufficient factual matter to support a reasonable and plausible inference of liability under Nevada law.   Whether NextPlat will be able to put forth tangible evidence proving its claims is a different question, but one that we need not address at this point.  *See Probill, Inc. v. Cumbie L. Off. Automation Consulting, Inc.*, No. 12-80821-CIV, 2013 WL 2158431, at *3 (S.D. Fla. May 17, 2013) ("All the Plaintiffs need to do at the pleading stage is comply with Rule 8(a), which they have clearly done.").   *See also Streeter v. Izadi*, No. 218CV01916RFBVCF, 2021 WL 4301480, at *3–4 (D. Nev. Sept. 21, 2021) (holding that pleadings sufficiently asserted breach of fiduciary under § 78.138(7) where plaintiff asserted intentional misconduct including the "making of false representations" and failures to "disclose [certain] payments to shareholders.").   Accordingly, Seifert's motion to dismiss Count I should be DENIED.

## C.   *Whether NextPlat is Barred from Seeking Rescission of the Seifert Stock Award*

Seifert next asks this Court to prevent NextPlat from seeking to rescind the Seifert Stock Award.   According to him, by pursuing a damages claim under its breach of contract count (Count II), the Company has effectively ratified the June 2 Agreement, and, by consequence, the Seifert Stock Award which is awarded by the

Agreement.   [D.E. 74 at 15].   The Company disagrees, arguing that a claim for damages does not preclude a concurring claim for rescission, and stressing that the June 2 Agreement and the Seifert Stock Award are two different acts, independent from one another.   [D.E. 78 at 9–12].   Because the Company is entitled to plead alternative, and even contradictory, claims for relief at this stage of the proceedings, and because it is not entirely clear from the pleadings whether the June 2 Agreement and the Seifert Stock Award can be deemed one and the same act, we find Seifert's motion premature at this point and recommend it be DENIED without prejudice.

The Company alleges that Seifert fraudulently misled its Board of Directors into approving the Seifert Stock Award during the June 2 Board of Directors meeting. It is settled law in Florida that a plaintiff is provided with an "election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract."   *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000).   Further, and as Seifert rightly points out, it is understood that the "two remedies…[are] mutually exclusive" because a "claim for rescission is predicated on disavowal of the contract" whereas "a claim for damages is based upon its affirmance."   *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1279 (11th Cir. 2004).   Accordingly, we agree with Seifert that, to the extent that the Company is seeking to both enforce and

rescind the contract, NextPlat will ultimately have to make a choice between these two remedies.[5]

The problem for Seifert's motion at this stage of the proceedings is that it is far from clear whether the June 2 Agreement and the Seifert Stock Award can be deemed to be one and the same thing, and the Company disputes this characterization. Indeed, NextPlat accuses Seifert of improperly conflating the two acts, and the June 2 Agreement itself appears to support the Company's reading that the agreement and the award are two independent agreements.   [D.E. 78 at 11]; [D.E. 73-2, Clause 4(c)] (providing that employee "shall be eligible" for stock awards under "equity incentive plans of the Corporation adopted by the Board" and that such "Share Awards shall be subject to the applicable Plan terms and conditions").   The plain text of the contract appears to support the Company's view that the June 2 Agreement merely makes Seifert eligible for this type of executive compensation, but that each award

---

[5] Contrary to the Company's suggestion that it can pursue concurrent claims for breach of contract and rescission, courts in Florida have been perfectly clear that "Florida law requires a party challenging a voidable contract to make an election of remedies between rescission and damages."   *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 861 (S.D. Fla. 2005).   NextPlat's effort to skirt around this settled body of precedent misses the point.   For instance, *Carran v. Morgan*, on which the Company purports to rely, is a case dealing with the unlawful trade of securities under a Florida law that expressly provides for liability "in an action for rescission, *if* the plaintiff still owns the securities, *or* damages, *if* the plaintiff has sold the securities."   Fla. Stat. § 517.211(2) (emphasis added).   There, the Court denied a similar motion to dismiss, not because damages and rescission were compatible remedies, but because at that early stage of the proceedings it was not clear whether plaintiff still owned the relevant securities.   *Carran v. Morgan*, 510 F. Supp. 2d 1053, 1061 (S.D. Fla. 2007). Indeed, the Court there expressly noted that, "at a later stage in the proceeding, [defendant] may renew this argument and [plaintiff] may need to elect between these two 'mutually exclusive remedies.'"   *Id.* (quoting *Liddle v. A.F. Dozer, Inc.*, 777 So. 2d 421, 421 (Fla. Dist. Ct. App. 2000)).

14

may be governed by its own terms and conditions independent from the agreement (*e.g.*, as provided by the Plan or the award certificate).   However, we need not make this determination at this stage of the case.   It suffices to say that were Seifert to prove that the Award and the June 2 Agreement are one and the same thing—a though act given the agreement's clear text—then the Company would have to choose "between these two mutually exclusive remedies."   *Carran*, 510 F. Supp. 2d at 1061; *see also S. Pan Servs. Co. v. S.B. Ballard Const. Co.*, No. 307-CV-592-J-33TEM, 2008 WL 3200236, at *4 (M.D. Fla. Aug. 6, 2008) ("Federal Rule of Civil Procedure 8(d) expressly authorizes pleading alternative or inconsistent claims. And it is perfectly permissible under Florida law for a plaintiff to state claims in the alternative for recovery under a contract theory or a quasi-contract theory.").   Accordingly, Seifert's motion to dismiss on this basis should be **DENIED without prejudice.**

### D.   *Whether NextPlat's Fraud Claims are Barred by Florida Law*

Finally, Seifert moves to dismiss NextPlat's fraud counts (Counts III, IV, and V) on the basis that these counts are precluded by Florida's independent tort doctrine. For the reasons that follow, we agree with Seifert that Counts IV and V (fraudulent misrepresentations and constructive fraud, respectively) should be dismissed because they run afoul of the independent tort doctrine and cannot be separately alleged. However, Count III (fraud in the inducement) is an independent tort that may be pled alongside a breach of contract and, as such, it is properly stated in the SAC.

As Seifert points out, the independent tort doctrine requires a plaintiff to demonstrate that a tort claim is independent of any breach of contract claim.   *See*

*Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., concurring) (noting that the principle of the doctrine is to restrict remedies in tort when parties have already specifically negotiated for contractual remedies).   This requirement, however, does not operate as a de facto prohibition on the assertion of tort claims between parties in contractual privity.   *See id.* at 402. This, the Supreme Court of Florida has said, is particularly true in the context of fraud in the inducement allegations that are pleaded alongside claims for breach of contract:

> The economic loss rule has not eliminated causes of faction based upon torts independent of the contractual breach even though there exists a breach of a contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. . . . Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract. It normally "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract."

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) (citations omitted); *see also Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999) (noting that a claim for fraudulent inducement can constitute a tort independent from the underlying breach of contract claim); *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004) ("Although parties in privity of contract are generally prohibited from recovering in tort for economic damages, we have permitted an action for such recovery in certain limited circumstances. One involves torts committed independently of the contract breach, such as fraud in the inducement.") (citation omitted); *Hinton v. Brooks*, 820 So. 2d 325, 326 (Fla. 5th DCA 2001) (claim

for fraudulent inducement to enter into contract not barred by independent tort doctrine).

Applying this established line of precedent to the facts of this case, we find that NextPlat's allegations in support of its fraudulent inducement claim (Count III) are separate from the allegations supporting the breach of contract claim and, as such, constitute an independent and actionable tort.   Under Florida law, a plaintiff must allege the following to support a fraud in the inducement claim: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance upon the representation." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003).

The SAC alleges sufficient facts that Seifert's material and deliberate misrepresentations induced the Company into approving the June 2 Agreement and his Stock Award, including statements from Seifert to the Board that the final draft of his June 2 Agreement had been reviewed and approved by the Company's outside counsel ([D.E. 88]), that he had properly researched the stock issue plan (*id.* ¶ 68), and that he had received outside council's approval (*id.* ¶¶ 70–71).   These acts of fraud, if proven, would have crystalized before the parties ever executed the agreement and are distinct from the acts that allegedly breached the terms of the June 2 Agreement.   Moreover, the Company asserts that Seifert made these representations to the Board knowing full well that they were false.   As alleged,

these acts constitute a fraud that is extraneous to the contract.   They are acts of alleged deceit supported by "proof of facts separate and distinct form the breach of contract," *HTP, Ltd.*, 685 So. 2d at 1239, and that were perpetrated to induce the Company into entering the agreement.   *See, e.g.*, *McArthur Dairy, LLC v. McCowtree Bros. Dairy*, No. 09-62033-CIV, 2011 WL 2118701, at *8 (S.D. Fla. May 27, 2011) ("A plaintiff has a cause of action for fraud if the fraud is perpetrated to induce the plaintiff to enter the contract.");   *Mejia v. Jurich*, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001) (holding that, "[W]hen fraudulent misrepresentations in the formation of the contract are alleged, as is the case here, the economic loss rule does not bar recovery.") (citations omitted). Accordingly, Defendants' motion to dismiss Count III should be DENIED.

We cannot say the same about NextPlat's fraudulent misrepresentation and constructive fraud counts (Counts IV and V), for these are subject to dismissal under the independent tort doctrine.   In addition, these counts are also duplicative of the breach of fiduciary duties in Count I and the fraudulent inducement claim in Count III.

As noted earlier, in Count II of the SAC, NextPlat pleads a breach of contract claim predicated on the terms of the June 2 Agreement.   [D.E. 73 at 13].   A review of the Company's fraudulent misrepresentations and constructive fraud counts reveals that these claims are intertwined with and arise from the same facts that comprise the alleged breach of contract.   In its breach of contract claim, the Company alleges that Seifert failed to fulfill his duties as Secretary by, among other

things, "failing to share critical legal advice provided to him by Mr. De Martino [with the Board]," "scheduling a meeting with the Board without adequate or accurate information," and "failing to provide adequate or accurate information to the Board[.]" [D.E. 75 ¶ 116].   The Company's fraudulent misrepresentation and constructive fraud allegations are indistinguishable from the matters asserted in its breach of contract claims, for these fraud allegations are solely based on Seifert's purported misrepresentations and omissions to the Board in connection with his employment agreement and the stock award.   *See*, *e.g.*, *id*. ¶¶ 132 ("Seifert falsely represented to the Board that his Unsanctioned Employment Agreement had been vetted and approved [by Mr. De Martino]"), 133 ("Seifert also falsely represented to the Board that NextPlat's counsel authorized and approved the Stock Issue"), 143 ("Seifert took improper advantage of his position of trust by failing to make full and fair disclosure [to the Board] in connection with the approval of his [employment agreement and stock award]").

Moreover, the damages sought by the Company under its breach of contract claim are likewise identical to those articulated under its fraudulent misrepresentation and constructive fraud counts.   *Compare id*. ¶ 121 (claiming loss of $45,000 in connection with the email scam, monetary losses and expenses in connection with the Stock Award, payment of undue compensation to Seifert, costs associated with Seifert's retention of documents, and expenses associated with replacing Seifert on an expedited basis) *with id*. ¶¶ 139, 146 ("Seifert's misrepresentations caused NextPlat injury through [] losses and legal expenses

incurred in connection with the Seifert's employment, payment of additional undue compensation to Seifert under the Unsanctioned Employment Agreement, and expenses associated with replacing Seifert's work on an expedited basis").   The fraud claims in Counts IV and V of the SAC are therefore not independent from the breach of contract claim, and must be dismissed on this basis.   *See Certified Collectibles Grp., LLC v. Globant, LLC*, 2021 WL 1214963, at *4 (M.D. Fla. Mar. 31, 2021) ("Although [fraud] can qualify as an independent tort, the critical inquiry focuses on whether the alleged fraud is separate from the performance of [a] contract. An alleged fraud is not separate from the performance of the contract [if] the misrepresentations forming the basis for the fraud also form the basis for the breach of contract claim.").

In addition, the Company's fraudulent misrepresentation claim is also duplicative of its fraud in the inducement claim.   The Company attempts to manufacture a fraudulent misrepresentation claim in addition to its fraudulent inducement count, but a plain reading of both counts reveals that they are duplicative and indistinguishable.   *Compare* [D.E. 73 ¶¶ 123–129] *with id.* ¶¶ 131–139. Similarly, the Company's constructive fraud claim does no more than parroting the allegations on which NextPlat predicates its fraud in the inducement and breach of fiduciary duties claims.   Accordingly, Seifert's motion to dismiss Counts IV and V of the SAC should be **GRANTED**.   To the extent the Company has a fraud claim at all in this case, it must rise or fall only on the fraudulent inducement count.   The remaining fraud in the performance of his contractual duties counts are barred.

### 2.  *NextPlat's Motion to Dismiss the Counterclaim*

**A.  *Whether Seifert Sufficiently Pleads Breach of Contract and Retaliatory Termination***

We now turn to NextPlat's motion to dismiss Seifert's counterclaims. [D.E. 80]. NextPlat first moves to dismiss Seifert's asserted breach of the June 2 Agreement and retaliatory termination counterclaims (Counts I and II).   In essence, the Company's attack on these two fronts boils down to a challenge of the factual allegations contained in the counterclaim and offers a countervailing version of the events that supposedly led to Seifert's termination.   As we noted above, however, factual attacks aimed at rebutting the pleader's version of events are not an appropriate argument in the Rule 12(b)(6) context.   *See King & Spalding*, 467 U.S. at 73 ("At this stage of the litigation, we must accept [counterclaimant's] allegations as true."); *see also Est. of Malkin v. Wells Fargo Bank, NA*, 998 F.3d 1186, 1200 (11th Cir. 2021) (noting that "the legal sufficiency of the factual allegations in [pleader's] counterclaim [] is all the court considers at the Rule 12(b)(6) stage); *Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001) ("A motion to dismiss a counterclaim under Rule 12(b)(6) is treated the same as a motion to dismiss a complaint.") (citation omitted).   Because we find that Seifert's counterclaims allege sufficient factual content to support a reasonable inference of liability for breach of contract and retaliatory termination, the Company's motion to dismiss Counts I and II of the counterclaim should be DENIED.

To state a claim for retaliatory termination under the Florida Whistleblower's Act ("FWA"), Florida Statutes §§ 448.101 *et seq.*, a plaintiff must establish that he

was retaliated against because he "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."   Fla. Stat. § 448.102(3).   The FWA defines "law, rule, or regulation" as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business."   *Id*. § 448.101(4).   Here, Seifert's counterclaims allege sufficient retaliatory facts to survive a 12(b)(6) motion to dismiss.

Among other things, Seifert alleges that his termination was motivated by one single force: Fernandez's vindicative desire to get back at him for refusing to effectuate a transaction that was in breach of corporate internal procedures and applicable federal regulations.   Specifically, Seifert asserts that his termination as CFO under the June 2 Agreement[6] was nothing more than a retaliatory act by Fernandez for his refusal to approve the $25,000 payment to retain Mr. Phillips—Fernandez's long-time personal attorney—as in-house counsel for the Company. According to Seifert, Fernandez's unilateral request came without a properly documented retainer agreement, a conflict-of-interest check, or an internal auditing review, as required by the Company's accounting controls and SEC regulations applicable to publicly traded companies, such as NextPlat.   [D.E. 75 ¶¶ 30–33]. Seifert asserts that his objections to sending company funds to retain Mr. Phillips in

---

[6] Seifert alleges that the parties performed under this contract from June 2 to June 22, and that the agreement was properly reviewed and approved by the Company's Compensation Committee and Board of Directors prior to being executed by then-CEO Mr. Phipps on June 2, 2021.

an unlawful manner unleashed a retaliatory campaign by Fernandez and the Company against him, including phone calls and email communications pressuring Seifert to relinquish his June 2 Agreement, and the launch of pretextual investigations aimed at fabricating an excuse to fire him.   *Id.* ¶¶ 54–60.

At this point of the proceedings, these allegations are sufficient to state a claim for breach of contract and retaliatory termination.   The Company may have a myriad of legitimate, non-retaliatory reasons for terminating Seifert, as it maintains in its motion to dismiss.   But at this stage we are merely concerned with the sufficiency of Seifert's pleadings and the factual allegations therein.   *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1298 (11th Cir. 2007) ("We are at the pleading stage, not the proof stage"); *Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 892 (N.D. Ohio 2003) ("[Plaintiff] does not need to prove [his claim] at the pleading stage. While [he] may fail at summary judgment or at trial, it must, at this stage, only allege a 'short and plain statement of the claim showing that [he] is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)).   Accordingly, NextPlat's motion to dismiss Counts I and II should be **DENIED**.

### B.   *Whether Seifert Can Plead Contract Theories in the Alternative*

NextPlat also moves this Court to dismiss Seifert's asserted counterclaim for breach of the March 11, 2021, contract, which he pleads in the alternative.   Here, the Company argues that because the March 11 Agreement was replaced and superseded by the June 2 Agreement, Seifert cannot concurrently plead damages under both contracts.   However, the Company's argument seems to ignore the

obvious fact that Count III of Seifert's counterclaim pleads breach of the March 11 Agreement only in the alternative.   In other words, Seifert will only be able to proceed under this cause of action if the June 2 Agreement is deemed void (*e.g.*, due to rescission).   Pleading causes of action in the alternative is perfectly permissible under Federal Rule of Civil Procedure 8(d)(3).   *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency."). Accordingly, the Company's motion to dismiss Count III of the counterclaim should be **DENIED** without prejudice.

## C.   *Whether Seifert Sufficiently Pleads Defamation*

In Count IV of his counterclaim Seifert asserts a defamation claim (based on liber per se) against both NextPlat and Mr. Fernandez.   According to Seifert, by publishing information about his termination and related litigation to the SEC—in compliance with its reporting requirements—the Company made malicious and false statements that impugn Seifert's professional reputation and, as such, constitute libel per se.   [D.E. 75 ¶¶ 66–67, 95–100].   We agree with the Company that the actual statements that the Company published in its K-8 Form, and that form the basis of Seifert's defamation claims, cannot not possibly amount to defamation and, therefore, recommend that NextPlat's motion to dismiss Count IV be GRANTED.

The elements of a claim for defamation are: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning

a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).   "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public."   *Id.*

A claim for defamation per se, on the other hand, may proceed under a theory of libel per se or slander per se depending on the facts of the case.   *See generally Ordonez v. Icon Sky Holdings LLC*, No. 10–60156–CIV, 2011 WL 3843890 (S.D. Fla. Aug. 30, 2011).   A published statement is libelous per se if: "(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession."   *Richard v. Gray*, 62 So.2d 597, 598 (Fla.1953) (en banc) (citations omitted); *see also Ordonez v. Icon Sky Holdings LLC*, No. 10-60156-CIV, 2011 WL 3843890, at *7 (S.D. Fla. Aug. 30, 2011) ("A publication constitutes libel per se under Florida law if, when considered alone without innuendo, it (a) charges that a person has committed an infamous crime or (b) tends to injure one in his trade or profession.").

Here, Seifert takes issue with the statements contained in the Company's June 28, 2021, 8-K Form.   Although Seifert alleges that the statements in this form maliciously impugn his reputation, not once does he cite the actual statements contained in the published document.   The 8-K Form states, in relevant part:

> Mr. Seifert was terminated for cause, and the Company's position is that Mr. Seifert is not owed any additional consideration or compensation relating to his prior service with the Company, or arising under any employment agreement. Mr. Seifert asserts that the termination was not for cause and that he is owed all compensation payable under his employment agreement executed in June 2021. The Company expects Mr. Seifert to assert claims against the Company under the June 2021 employment agreement. The Company believes it has adequate defenses to any such claims. The Company has determined to initiate litigation against Mr. Seifert, asserting a number of claims including but not limited to rescission of the employment agreement, fraud in the inducement in connection with the execution of the employment agreement, and breach of the fiduciary duties of good faith and loyalty. The Company does not expect to seek substantial monetary relief in the litigation.

[D.E. 75-8 at 2, 6].

Based on the allegations in the counterclaim and the undisputed nature of the publication at issue, the claim can be dismissed as a matter of law because no reasonable person could conclude otherwise.   And, indeed, "[w]hether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court." *Turner v. Wells*, 879 F.3d at 1262–63 (citing in part *Keller v. Miami Herald Publ'g Co.,* 778 F.2d 711, 715 (11th Cir. 1985) (applying Florida law)).   In making that assessment, "a court should construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement." *Id.* at 1263 (citing *Keller*, 778 F.2d at 717).

Given this standard, Seifert's defamation claim is not plausible.  A review of the actual text on which Seifert purportedly bases his defamation claim clearly reveals that his arguments lack merit.  A plain reading of the actual text contained within the 8-K Form clearly indicates that Seifert cannot meet the threshold requirements of showing that the statements constitutive false statements.  On their face, these statements clearly constitute legal opinions rather than false statements and, as such, they cannot form the basis of his defamation claim.  *See Tenet Solutions, LLC, v. Amberstone Enterprises LLC*, No. 21-80649-CIV, 2021 WL 4991299, at *6 (S.D. Fla. July 16, 2021) (statements accusing plaintiff of selling items in breach of certain patents "were based on legal opinions, not false statements of fact."").  Contrary to Seifert's allegations, nowhere do these statements express "derogatory public reports" accusing Seifert of "defrauding the Company," nor do they "go out of their way to needlessly and maliciously impugn [Seifert's] character and professional reputation."  [D.E. 75 ¶¶ 95–96].  In light of the repeated and clear statements reflecting the Company's legal posture (*e.g.*, "the Company's position is that Mr. Seifert is not owed any additional consideration," "Mr. Seifert asserts that the termination was not for cause," "[t]he Company expects Mr. Seifert to assert claims against the company," and "the Company believes it has adequate defenses"), these statements are best described as legal opinions, not false statements. Accordingly, these words cannot constitute defamatory statements.

Even if they were not pure legal opinions, the nature of the statements at best are not capable of being deemed true or false.  The statement in the 8K that the

Company deemed his conduct grounds for cause "is the [counter-Defendants']
subjective assessment of [Seifert's] conduct and is not readily capable of being proven
true or false." *Turner,* 879 F.3d at 1264 (citing *Michel v. NYP Holdings, Inc.,* 816 F.3d
686, 697 (11th Cir. 2016) (explaining difference between statements of opinion and
statements of fact, noting that statements of fact are "readily capable of being proven
true or false")).   The fact that Seifert maintains that another person could draw a
different conclusion after a full review of the facts does not make the Company's
assessment of Seifert's acts anything other than opinion.[7]

Turning to Seifert's libel per se argument, this iteration of his claim also fails
because its soundness depends on the consideration of extrinsic evidence.   "A
publication constitutes libel per se under Florida law if, when considered alone
without innuendo, it (a) charges that a person has committed an infamous crime or
(b) tends to injure one in his trade or profession."   *Ordonez,* 2011 WL 3843890 at *7;
*see also Scobie v. Taylor,* No. 13-60457-CIV, 2013 WL 3776270, at *4 (S.D. Fla. July

---

[7] This was the conclusion reached by our Court and the Court of Appeals in *Turner*,
in a case that involved multiple allegations of misconduct contained within a lengthy
investigative report prepared by counsel.   There, far more alleged defamatory
statements of fact could be attributed to the author of the report and a far more
compelling case was made that the defamation claim could survive.   Yet, the
Eleventh Circuit agreed that those multiple assertions of alleged misconduct were all
ultimately opinions of a party or its agents, which could not be meaningfully
interpreted otherwise – just like our case.   *Turner,* 879 F.3d at 1264 ("the Report
included several cautionary statements that inform a reasonable reader that the
conclusions contained therein are opinions. . . . For example, the Report stated several
times that it sets forth the Defendants' opinions, based on a lengthy investigation").
In sum, if the extensive, fact-laden report in *Turner* was not enough to state a
plausible defamation claim under Florida law, in no shape or manner could this
neutrally-stated 8-K disclosure ever be deemed defamatory.

17, 2013) ("When context is considered and extrinsic facts and innuendo are needed to prove the defamatory nature of the words, the statements are not defamatory per se.") (quotation marks and citation omitted).   Here, we would need to resort to extrinsic facts and innuendo to reach the conclusion that the alleged statements are defamatory; namely, we would need to incorporate into these bear statements of legal theories the facts alleged in the Company's pleadings in this case.   That is not what a defamation per se claim is made of.

Accordingly, Seifert's claim for defamation fails as a matter of law, and the Company's motion to dismiss Count IV should be GRANTED.

### D.   _Whether Seifert Sufficiently Pleads Negligent Misrepresentation_

Finally, we agree with NextPlat that Seifert's negligent misrepresentation counterclaim (Count V) is deficient because it fails to meet the heightened pleading requirements of Rule 9(b).   Seifert alleges that Mr. Phipps and the Company made pre-contractual representations and promises of job security to him that turned out to be a sham.   Therefore, this claim sounds in fraud.   [D.E. 82 at 19–20] (acknowledging that his claim is alike a "fraudulent inducement" claim).   Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind shall be averred generally." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied if a plaintiff pleads:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such

statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).   In other words, this requires a plaintiff to establish the 'who, what, when, where, and how' of the fraud." *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006)).

Seifert's counterclaims do not meet the particularity requirements of Rule 9(b). Seifert alleges that "NEXTPLAT, *through its representatives* such as Mr. Phipps, made *certain misrepresentations* to SEIFERT regarding a material fact," and that he was "*repeatedly told* that if he continued to perform services as NEXTPLAT's CFO and the Nasdaq uplisting were successful, his future with NEXTPLAT would be secure and his efforts would be rewarded with a long-term executive-level employment agreement."   [D.E. 75 ¶¶ 101, 102] (emphasis added).   However, the counterclaim provides no other details regarding such alleged misrepresentations and is devoid of any specific allegations of fact as to the timing, location, or means of transmission of these communications.   The counterclaim is clearly missing the "who," "when," "where," and "how" of the fraud.   Accordingly, NextPlat's motion to dismiss Count V should be GRANTED, because the count fails to meet Rule 9(b)'s particularity requirements.[8]

─────────────

[8] Further, to the extent that the promises made were indeed embodied by the June 2

## *IV.    CONCLUSION*

For the foregoing reasons, the Court RECOMMENDS that the motions be **GRANTED in part** and **DENIED in part** as follows:

1.  Seifert's motion to dismiss [D.E. 74] Counts IV (fraudulent misrepresentation) and V (constructive fraud) of the SAC should be **GRANTED**. Seifert's motion to dismiss Counts I, II, and III of the SAC should be DENIED.

2.  NextPlat's motion to dismiss [D.E. 80] Counts IV (defamation) and V (negligent misrepresentation) of the counterclaim should be **GRANTED**. NextPlat's motion to dismiss Counts I, II, and III should be DENIED.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; see, e.g., Patton v. Rowell, 2017 WL 443634 (11th Cir. Feb. 2, 2017); Cooley v. Comm'r of Soc.

---

Agreement, Seifert's claims is subsumed and precluded by his breach of contract claim in Count I.  Based on the facts pleaded, the Company delivered on these promises by extending to him and executing the June 2 Agreement.  Indeed, by Seifert's own account, "***consistent with earlier promises and representations***, NEXTPLAT extended SEIFERT a new employment agreement for a three-year renewable term, and an increased annual salary of $240,000.00 plus annual bonuses and other benefits, and well as additional stock ownership." [D.E. 75 ¶ 17] (emphasis added).

31

Sec., 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 9th day of

January, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge